SAMANTHA ROEBUCK v. THE STATE.

No. 5427.   Decided June 25, 1919.

1.—Murder—Evidence—Conspiracy—Co-conspirator—Threats.

Where, upon trial of murder, testimony was admitted for the State concerning a conversation between the accomplice of the defendant and the

witness, with regard to some statements that the accomplice made implied threats against the deceased, in the absence of the defendant, and no conspiracy had been shown, the declarations and acts of the alleged co-conspirator were inadmissible in evidence.

2.—*Same—Poisoning—Insufficiency of the Evidence—Principal—Accomplice.*

Where, upon trial of murder by poisoning, the evidence was insufficient to support the conviction of defendant as principal and at the most would constitute defendant an accomplice and the indictment charged her as a principal, the judgment must be reversed and the cause remanded.

Appeal from the District Court of Nacogdoches. Tried below before the Hon. Lee D. Guinn.

Appeal from a conviction of murder by poisoning; Penalty, thirty-five years imprisonment in the penitentiary.

The opinion states the case.

*Geo. S. King, Wm. McDonald, S. H. Townsend* and *C. C. Watson* for appellant.

On question of declaration of co-conspirators: La Rue v. State, 66 Texas Crim. Rep., 286, 146 S. W. Rep., 194; Hickey v. State, 62 Texas Crim. Rep., 568; Ripley v. State, 51 id., 126; Figaroa v. State, 58 id., 611; Choise v. State, 52 Texas Crim. Rep., 285, 106 S. W. Rep., 387; Spencer v. State, 52 Texas Crim. Rep., 289, 106 S. W. Rep., 386.

*E. A. Berry,* Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was given thirty-five years in the penitentiary for murder, the deceased being her husband, by means of poisoning.

The evidence shows her alleged con-conspirator Williams administered the poison to deceased, husband of appellant, if any was administered. It excludes her presence and participation in the act. The theory of the State was that there existed a conspiracy between appellant and Williams to take the life of her husband. The evidence in this connection was not very cogent, and if her confession is omitted, the testimony would not sustain such contention. Williams had been boarding with appellant and her husband, went away and returned, over the protest of appellant but with the consent of her husband. The deceased died at a lumber camp about five miles from his home where he and Williams were working. The State's theory is that Williams administered the poison by putting it in the provisions that appellant ate which he carried with him to the lumber camp for his dinner. There is no direct evidence that Williams inserted the poison in any of the food of deceased, but it is disclosed that about 11 or 11:30 o'clock the deceased ate something taken from his bucket, leaving the bulk of his dinner

to be eaten later. Shortly afterwards he was taken with something like convulsions. These followed each other for about thirty minutes when he died. This was about five miles from where appellant was living and where she was then in fact. The theory of the State was that death was produced by strychnine poisoning. The contents of his dinner pail and his stomach were sent to the city of Austin for analysis. The stomach was divided into two parts, and an analysis made of one part, the report showing that morphine to the amount of about two and one-third grains was discovered. This report was made to the officers of San Augustine County where the homicide is alleged to have occurred. The chemist at Austin was then notified of the fact that deceased was supposed to have died from strychnine poisoning. An analysis was then made of the remaining portion of the stomach and strychnine discovered. One analysis showed morphine and the other strychnine. The food taken from the dinner bucket was analyzed and no trace of poison found. These practically are the facts with reference to the posoning.

The witness Long was permitted to testify as follows: "I boarded with Grady Williams at Mr. Elisha Warr's. We were rooming there together one week before the death of Frank Roebuck. I had a conversation during that week with Mr. Williams regarding Mr. Roebuck. Understand, when we had this conversation there was no name called. He said in the conversation that there was a lady in town he thought a great deal of and she of him and she was very affectionate to him, but outside of her affection and loving him. he said she was a lady. He says, 'I think a great deal of this woman and she has got a man, but she may not always have him. You can't tell or say about what will or might turn up.' He just remarked, 'That is the lady where I have been boarding where I came from when I came here.'" Many objections were urged. The bill shows it was made in the absence of appellant at the residence of a gentleman whose name is mentioned, and this was some time prior to the death of deceased, and no conspiracy had been shown. In order to let in this character of testimony there must be a conspiracy between the declarant and the accused. Until a conspiracy is shown the acts and words and declarations of another would be hearsay, except as against the declarant or the actor, and even where declarations or statements or acts of the alleged co-conspirator are admissible, they must be in furtherance of the common design. These statements of William taken in their strongest light were but veiled threats to do away with Roebuck, or in some manner get him out of the way so that he might obtain his wife. There is some evidence to the effect that Williams and Mrs Roebuck, appellant, had been criminally intimate, but it is also shown that she had broken off with him and declined to have

any further connection with him. We are of opinion this testimony should not have gone to the jury.

It is appellant's contention the evidence is not sufficient to support the conviction. One ground is that, taking the State's case at its full value, it fails to connect her or show in any way that she could have been a principal; that the State's evidence excluded any idea of her being a principal, and if the State could ask for a conviction for a violation of any statute, it would be under the law which denounces punishment as an accomplice. It is unnecessary to state the facts in detail. The entire record discloses that she was not present at the time of the homicide, or that she administered any poison, or could have administered it. The utmost the State's case showed is, under her confession, that she was aware that Williams intended to destroy the life of her husband, or get rid of him in some way, and the facts tended to show that she knew he intended to administer poison. There is no evidence that she administered poison, or prepared poison, or placed it in the food of deceased. The State's case along this line is made principally by statements in her confession, which lead to the conclusion that Williams may have placed poison in the food of the deceased, and that she knew in advance that he was going to do it. This would not constitute her a principal. At best, if the State has a case against her it would be that she is an accomplice. The indictment charged her as a principal. She was tried as such and the conviction was thus obtained. We are of opinion the evidence does not sustain the conviction.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*