F. W. ANDERSON v. THE STATE.

No. 5670.   Decided October 13, 1920.

1.—Murder—Conspiracy—Charge of Court—Declarations and Acts of Co-conspirators.

Where, defendant was charged as a principal, and the evidence showed that his co-principal did the killing, the State relying solely upon circumstantial evidence to connect the defendant with the offense, admitting the acts and declarations of said co-principal, in the absence of the defendant, the court should have instructed the jury that such acts and declarations made before the act was done were inadmissible to show the conspiracy and being admitted could not be used as such, and the mere presence of the defendant at the homiicde without aiding and assisting his co-principal would not make him a principal and could not prove the conspiracy.

2.—Same—Evidence—Threats—Declarations · of    Co-defendant—Charge    of Court.

A declaration by a co-defendant conveying a threat against somebody but not showing what party he referred to, and not referring to the deceased should not have gone to the jury and was inadmissible for any purpose, unless a conspiracy was shown and that said remarks related to the deceased, and the jury should have been instructed that this testimony could not be used to prove the conspiracy.

Appeal from the District Court of Fisher.   Tried below before the Honorable W. R. Chapman.

Appeal from a conviction of murder; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

*Walter S. Pope, L. H. McCrea,* and *Stinson, Chambers & Brooks,* for appellant.—On question of conspiracy: Smith v. State, 81 S. W. Rep., 936; Hudson v. State, 66 id., 668; Wallace v. State, 87 id., 1041; Dobbs v. State, 100 id., 947; Roebuck v. State, 213 id., 656; Tones v. State, 88 id., 217.

*Alvin M. Owsley,* Assistant Attorney General, and *Joe C. Randall,* District Attorney, for the State.—On question of conspiracy: Smith v. State, 48 Texas Crim. Rep., 241; Barnes v. State, 45 S. W. Rep., 495; Smith v. State, 65 S. W. Rep., 186.

87 Tex—41

DAVIDSON, Presiding Judge.—Appellant was convicted of murder and allotted twenty years in the penitentiary.

The former appeal is found reported in 85 Texas Crim. Rep., 411, 213 S. W. Rep., 639. The facts are not very materially different from those shown on the former appeal. We notice that in the former opinion it was stated that the presence of Ray Anderson was not accounted for at his father's residence and in connection with his father on the day of the homicide. · This record shows that after the difficulty or quarrel between appellant and deceased and his brother in the field where they were cutting sorghum. and maize on Friday evening, appellant went to his residence, got his auto and went to see his son Ray who lived seven or eight miles distant. This is accounted for by reason of the fact that the two Smiths told him that evening he must get his cane out at once as they purposed turning their stock loose in the field for grazing purposes. He went that evening for his son Ray to secure his assistance. Ray agreed to go, and appellant took Ray's wife and child home with him, Ray remaining behind to make some arrangement with a neighbor about attending to his stock while he was absent working with his father in gathering the forage crop. The work was to begin Monday morning following the Friday evening when these matters occurred. It is also shown that appellant and his son returned from Anson after seeing the Smiths in Anson on Saturday morning, being in doubt as to their movements and to avoid trouble with the Smiths; that they reached home about the noon hour or little before; that they were at that time unarmed; that after reaching home and taking their purchases from the auto and placing them in the house, Ray got his gun, appellant not having or owning any weapon; that they started north to the Swenson ranch after another son of appellant to obtain his assistance to begin work Monday morning in saving the forage crop. This son agreed to come and was permitted so to do by the foreman of the Swenson ranch for the time desired to be economized by the father in gathering the crop. This son came in his own buggy, appellant and Ray returning in the auto. They came the direct road from the Swenson ranch to appellant's house. They passed the house of deceased in their auto driving rather rapidly, and when about half way between the residence of deceased and that of appellant they discovered the Smith boys, three in number, in a buggy in the public road in front of the residence of Mr. Gooding. As they approached the Smiths began to get out of the buggy, one of them having a shotgun they had previously obtained from a relative that morning as they returned from Anson. As the car approached the buggy two shots were fired, one of which killed Otto Smith and one of them from Smith's gun evidently entered the car as it showed evidence of quite a number of shot on the side where Ray Anderson was sitting There is a contention that the gun held by one of the Smiths went off accidentally, the charge going in the ground. Some of this evi-

dence seems to be reconcilable with the fact that only two shots were fired. It is certain that Ray Anderson fired one shot, for it killed Otto Smith, and it is evident that another shot was fired that entered the car. The testimony leads to the dispassionate conclusion that as Anderson approached the Smiths began to get out of their buggy, and the Smith who had the gun was on the side of the buggy next to where Anderson would necessarily pass, and the range of the shot in the auto indicate that that shot was fired before Anderson reached the point exactly opposite where the Smiths were. Further details we think are unnecessary to state.

After appellant left Ray Anderson's residence with Ray's wife and child, Ray went to see a neighbor to secure his services to look after his place and stock during his absence, with a view of going to his father's residence that evening or night. After doing this, enroute to his father's he stopped at a church where services were being conducted, and while there he had a conversation with three parties, the substance of which was that he asked them if Mrs. Smith, then wife of deceased, was in the congregation. None of them seemed to know and upon investigation, it was determined she was not present. The theory of the State was that he was looking for Otto Smith that night. The court charged the jury with reference to this, that they should not consider these statements and the acts and conduct of Ray Anderson at the church that night in connection with the conversation with the three witnesses for any purpose, unless they should find a conspiracy existed between himself and his father. Exception was reserved to this charge as being insufficient and of a material disadvantage to appellant before the jury. We are of opinion the criticism of the charge is correct. If there was no conspiracy shown this testimony was seriously detrimental, because it was used to impute a concert of action and previous combination and purpose to kill on the part of Ray Anderson in pursuance to an agreement with his father. If this conspiracy did not exist, then clearly the acts and conduct of Ray Anderson were inadmissible, as the court stated, for any purpose, and should never have gone to the jury. It will be noticed that the conspiracy, if shown at all, is by circumstances, and in the mind of the writer not very cogent. In giving this charge the court should have instructed the jury that the acts and conduct of Ray Anderson that night could not be used as evidence of a conspiracy between himself and his father. These were but the acts, if a conspiracy existed, of a co-conspirator, which would not be evidence of the existence of a conspiracy. A conspiracy in this case cannot be proved by these declarations of Ray Anderson. It must be proved aliunde, and the court should have instructed the jury that they should and could not consider such testimony to show a conspiracy between Ray Anderson and his father, appellant. If the jury should conclude there was a conspiracy then these acts and declarations could be considered by them, but on the other hand if

there was doubt in their minds as to the conspiracy, they may have used this conduct and these acts and declarations of Ray Anderson to prove such conspiracy or aid in so doing. This was not permissible, and the jury should have been so instructed. The criticism of the charge is correct, and of such a nature as to require a reversal of the judgment. There are quite a number of cases which might be cited, but we cite Robuck v. State, 85 Texas Crim. Rep., 524, 213 S. W. Rep., 656; Dobbs v. State, 51 Texas Crim. Rep., 113, 100 S. W. Rep., 947; Hudson v. State, 43 Texas Crim. Rep., 420, 66 S. W. Rep., 668; Wallace v. State, 48 Texas Crim. Rep., 418, 87 S. W. Rep., 1041; Smith v. State, 46 Texas Crim. Rep., 267, 81 S. W. Rep., 936. It is not questioned by either side that appellant did nothing at the time of the homicide except to drive his care as he was passing the Smiths. He had no gun and did no act, and the only theory upon which he can be found guilty or connected with that homicide, so as to justify a conviction, would be by reason of the fact of a pre-existing conspiracy in which he advised or aided his son or encouraged him to do the killing, and in connection with that, that he was present at the time of the homicide. His mere presence at the time of the homicide without some previous encouragement or advice on his part to his son Ray to kill should not be used against him to show guilt. All the circumstances relied upon by the State were remote in their bearing on the existence of a conspiracy. It is, therefore, the more necessary to guard the jury against reaching an illegal and improper conclusion from the acts and conduct of Ray Anderson until there had been first a conspiracy established.

Another error assigned is the action of the court in permitting the witness Potts to testify as follows: ''Well, the night before Friday night, me and another fellow we had had a little racket ourselves and he (Ray Anderson) walked up and whispered to me and said, 'I heard you pulled you off one last night,' and I said, 'Yes, don't say anything about it,' and he says, 'I am going to pull me off one tomorrow if the right party is in town,' and I says, 'You are?' and that is all I remember being said.'' We are of opinion this testimony was not admissible. It is a general statement by Ray Anderson that he was going to ''pull off one tomorrow if the right party was in town.'' Who this was or what it meant, or who he referred to is not specified or indicated. He was in town the next day, and if he referred to deceased, deceased was in town also, and he did not have any disturbance with him. In fact, he left town at the suggestion of his father for fear there might be trouble. But there is nothing in this testimony to indicate or specify the deceased as the party with whom he was going to have this prospective trouble. This testimony should not have gone to the jury, but inasmuch as the court permitted it he should have instructed the jury not to consider it for any purpose unless a conspiracy was shown, and that said re-

marks related to deceased, and then they should have been instructed that this testimony could not be used to prove the conspiracy.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Rehearing denied October 13, 1920.—Reporter.]