ROY BARNES v. THE STATE.

No. 5984.   Decided March 16, 1921.

Rehearing denied June 24, 1921.

1.—Murder—Evidence—Other Transactions—Malice—Intent.

Upon trial of murder, there was no error in admitting in evidence tes-
timony as to a previous altercation between the parties on a certain bridge
near the scene of the shooting, the same showing the connection this trans-
action had with the main transaction and that defendant and his companions
acted in concert and showed the condition of their minds to be fatally bent
on mischief and filled with malice against deceased and his companion.

2.—Same—Evidence—Credibility of Witness.

Upon trial of murder, there was no error in sustaining objections to
testimony showing that the State's witness had filed a complaint against
the third party for rape, who had been acquitted; nor was there error in
sustaining objections to questions to said witness as to whether or not she
and her sister had accompanied two men to a certain town and stayed there
over night; besides, the questions would have been answered in the negative.

3.—Same—Circumstantial Evidence—Charge of Court.

Where, upon trial of murder, the evidence showed that the party pur-
sued, shot, and cut deceased, defendant being one of them, there was no
error in the refusal of the court to charge on circumstantial evidence.  Fol-
lowing Colter v. State, 37 Texas Crim. Rep., 284, and other cases.

4.—Same—Requested Charge—Cause of Death of Deceased.

Where, upon trial of murder, the evidence showed that the deceased was
cut dangerously a number of times; that defendant was one of the assailants
and that shortly after the occurrence he was seen washing blood from his
knife, there was no error in refusing a requested charge that no evidence
supported the proposition that death ensued by reason of cutting the de-
ceased with a knife.

5.—Same—Manslaughter—Charge of Court—Principals.

Where the requested charges on the law of manslaughter wholly omitted
any reference to the mental condition of defendant at the time of the homi-
cide, they were correctly refused; besides some of these charges ignored
entirely the theory of principals.

6.—Same—Requested Charge—Weight of Evidence.

Where defendant's requested charge on manslaughter was defective in
omitting any reference to the mental condition of defendant at the time of
the homicide and was also on the weight of the evidence, there was no error
in refusing same.

7.—Same—Requested Charge—State's Witness—Accomplice.

Where, upon trial of murder, the undisputed testimony showed that a
certain State's witness was one of the two men who came to the scene of
the shooting some two hours after it took place and assisted in carrying de-
ceased to his home, and had no connection with the shooting, there was no
error in refusing a requested charge to the effect that said witness was an
accomplice.

8.—Same—Rehearing—Requested Charge—Main Charge—Motive.

Where the first part of defendant's requested charge, No. 7, was partly covered by the court's main charge, and another part thereof did not apply the law to the facts with reference to the acts and deeds of defendant's companions as to motive, there was no error in refusing same.

Appeal from the District Court of Bowie. Tried below before the Honorable P. A. Turner.

Appeal from a conviction of murder;; penalty, ninety-nine years' imprisonment in the penitentiary.

The opinion states the case.

*R. P. Dorough,* and *R. H. Jones,* for appellant.

*Sid Crumpton,* attorney for appellant in motion for rehearing, only.

*R. H. Hamilton,* Assistant Attorney General, for the State.

LATTIMORE, Judge.—Appellant was convicted in the criminal District Court of Bowie County of murder, and his punishment fixed at confinement in the State penitentiary for ninety-nine years.

All the parties to this tragedy were at a dance which broke up about 12 o'clock at night. John Reeder and the deceased, Tom Smith, were the escorts of Edith and Hallie Tittle, and the party left the dance together in a car, Reeder and Edith on the front seat of the car and deceased and Hallie in the rear. According to the State's testimony, the substance of which we give, before their car left the scene of the dance, appellant came out to it and accosted deceased, calling him vile names, and telling him not to open his head, if he did he, appellant, would take him out of there and stamp his brains in the dirt, that he wouldn't any more mind killing him than a dog. A short distance from the house where the dance took place, a car containing appellant and four other young men passed that in which was deceased and his party, shortly after passing which several shots were fired from the car in which was appellant. A little further on appellant and his party stopped their car on a bridge, leaving no room for the other car to pass, and when the latter came up three of the men, including appellant, got out, went back to the other car and tried to make one of the girls drink from a bottle of whisky, and appellant caught hold of the girl escorted by deceased, pushed her clothes up to her waist, caught her by the leg and tried to pull her from the car, accompanying this by a threat to have intercourse with her there in the road. When remonstrated with by Reeder, appellant cursed and abused Reeder, and said he was not afraid, that he was used to chewing the sights off of cannons etc,, etc., but was finally persuaded to go back to the car, get in and go on. A little further down the road appellant's car was again stopped, and when Reeder tried to drive past it, appellant ran to Reeder's car, jumped on the running board, and with an oath de-

manded that the car be stopped, which was done. About this time one of appellant's party named Hays said to Reeder, "We want this s—n of a b—h you have got on the back seat," and attacked deceased, choking him and beating him over the head. Some of the witnesses say that at this juncture deceased drew a pistol and shot Hays, the party who had attacked him, apparently not inflicting any serious injury upon him. Deceased then jumped from the car and ran, appellant and the two Hays boys pursuing and shooting at him. After running a short distance deceased fell and the other three overtook him and kicked him several times in the head and face, and one of the Hays boys said, "The s—n of a b—h isn't dead, shoot him again," and one of them fired, and also one or more of them cut deceased. They then brought him back and put him in the Reeder car, and in a moment or two one of them shot or shot at him again. About this time the two girls got out of the car and ran away. Reeder tried to start his car, but appellant cut off the switch and said, "Stop this car, G—d d—n it, we want to finish the s—n of a b—h." Reeder got out of his car and appellant grabbed him, and Reeder knocked appellant's gun out of his hand, broke loose and ran, overtaking the two girls with whom he walked a distance of some four or five miles to their home. About two hours later two other men who had been to the dance came by the scene of the shooting, saw the car of Reeder standing in the road, heard a voice coming from same, and going to the car discovered deceased, who called for water. They went to a house and got some water. Before they got back another car drove up and stopped, and as the two men with the water approached the car in which deceased was, appellant stepped from behind it with a pistol in his hand, which he pointed at the witness Hatcher, and wanted to know what in the hell he wanted. Said witness told him, to give Tom Smith some water and take him home. Appellant replied, "Well, I don't think you will take him," or something like that, and also said, "Let the s—n of a b—h lie here and die." Appellant put his pistol against the body of said witness, and cursed and threatened him, but after persuasion and an agreement on the part of said witness to swear for appellant, the latter got in his car and drove off, and the two men carried deceased to his home. Later that night these two men and another saw appellant at a store house where they were getting something to eat, and saw appellant washing blood off his knife. On this same occasion appellant said to a brother of deceased, in substance, that he understood Tom Smith claimed that he, appellant, cut him, but he had better drop that as the more they stirred it the worse it would stink. In addition to being shot, deceased was stabbed and cut in numerous places, and badly bruised about the head and face.

Appellant has several bills of exception relating to what occurred at the place where their car stopped on the bridge and they went back to the car in which was deceased. We do not set out these bills at length, for in our view what was done by appellant and his companions at that time was a necessary part of the development of the transac-

tion, a part of which was this homicide. What occurred at the bridge showed the connection and concert of appellant and the Hays boys, and the condition of their minds, the possession of hearts regardless of social duty, and fatally bent on mischief, also the existence of malice. Their treatment of the young woman escorted by the deceased, the proximity and time of the original abuse and threat toward deceased before the cars left the place where the dance occurred, the attitude of appellant toward the whole party with deceased, the nearness of this transaction to the time of the killing, seem all to tend to show a continuous transaction in which the appellant and his comrades were the aggressors and which culminated in the death of deceased, the attack on Reeder, and the flight of the girls and Reeder.

A bill of exceptions was reserved to the refusal of the court to allow Edith Tittle to answer a question, the substance of which was if she had not filed a complaint against a boy for raping her and he had been acquitted. While the answer expected to that question is not stated, we think the question manifestly improper.

Nor was there any error in sustaining objection to appellant's question to said witness as to whether or not she and her sister had gone to Texarkana with two men and stayed there from Saturday to Monday. Even if particular instances of misconduct were admissible as affecting the credibility of the witness, this question would contain so little, except insinuations, that we would hold its rejection proper. The bill also states that the witness would have answered "no" to said question.

Appellant took several exceptions to the charge of the court. We have examined each of these carefully. The overwhelming direct testimony showed that the parties pursued, shot and cut deceased, appellant being one of said parties named in the direct testimony to the above effect, made it unnecessary for the court to charge on circumstantial evidence. It is only necessary to charge on this character of evidence when the case depends wholly thereon. Colter v. State, 37 Texas Crim. Rep., 284; Polk, et al. v. State, 35 Texas Crim. Rep., 495; Rodgers v. State, 36 Texas Crim. Rep., 563.

The exception to the submission of the issue of death by cutting at the hands of appellant, for the alleged reason that no evidence supported this proposition, presents no error. Deceased was cut dangerously a number of times, once in the lungs, once near the heart, and while others were also assaulting him, the evidence showed that appellant was one of the assailants and shortly after the occurrence he was seen washing blood from his knife. None of the other exceptions to the court's charge seem to present any error.

Special charges Nos. 1, 3 and 5 asked by appellant presenting various phases of manslaughter, would be erroneous, if for no other reason, because same wholly omit any reference to the mental condition of appellant at the time of the homicide. There could be no proper charge instructing the jury to find one guilty of manslaughter under

a given state of facts which omitted to submit to them the issue as to whether or not at such time the mind of the accused was in such condition as to render it incapable of cool reflection.

There was no evidence to support special charges Nos. 2 and 4 to the effect that if a statement was made by Tom Hays that he was shot, and same aroused in appellant's mind such passion as to render it incapable of cool reflection, and thereafter acting with Hays he killed deceased, he would be guilty of no higher offense than manslaughter. These special charges also ignore entirely the theory of principals.

Appellant's special charge No. 3 mentioned above, was also on the weight of the evidence, and assumed that the killing was done by Tom Hays.

·The requested charge to the effect that the witness Hatcher was an accomplice was correctly refused, as there was no evidence raising that issue. The undisputed testimony shows that Hatcher was one of the two men who came to the scene of the shooting some two hours after it took place, and assisted in carrying deceased to his home. The fact that the justice of the peace of the precinct had complaints filed against all of the parties who had anything to do with the transaction, including Hatcher, would not necessitate a charge on accomplice testimony as to him, it affirmatively appearing that there was no evidence tending to connect him with the shooting.

We find no evidence in the record raising the issue that Tom or Simeon Hays had any prior ill-will or malice against deceased, or that they were actuated by any different motives from that of appellant, and special charge No. 7 was also covered as to its other features, by the main charge.

Finding no error in the record the judgment will be affirmed.

*Affirmed.*

ON REHEARING.

June 24, 1921.

LATTIMORE, JUDGE.—Appellant complains in his motion for rehearing that we erred in holding that the principle enunciated in his special charge No. 7, was covered by the main charge of the trial court. We did not discuss this matter at any length in our original opinion. Appellant's special charge No. 7 was as follows:

"Gentlemen of the Jury: You are charged that you cannot consider for any purpose the words, acts or deeds of Tom Hays or Simeon Hays as the motive which actuated either or both in assaulting or shooting the deceased, Tom Smith, unless you believe beyond a reasonable doubt that the defendant Boy Barnes knew of same and had previously agreed to the slaying of the said Tom Smith.

"In this connection you are charged that the defendant can only be tried on the motive which actuated him on the occasion in question and he is not bound by the motive, intent or acts of Tom Hays or Simeon Hays, or both unless you believe beyond a reasonable doubt that he knew of same and agreed thereto."

We find the first part of this charge hardly clear, it not appearing how the words, acts or deeds of the Hays brothers could be the motive which actuated them or appellant. Insofar as the last paragraph of said charge presented a correct legal proposition, same was fully covered by that portion of the main charge of the trial court which is as follows:

"I further charge you, that if you believe from the evidence beyond a reasonable doubt that either Tom Hays or Simeon Hays unlawfully killed Tom Smith, and that the defendant was present at the time of such killing, still you will find the defendant not guilty unless you believe from the evidence beyond a reasonable doubt that the defendant knew the unlawful intent and aided by acts, or encouraged by words or gestures the party or parties who did the killing, or unless you believe from the evidence beyond a reasonable doubt that the defendant, Tom Hays and Simeon Hays agreed to kill said Tom Smith."

Aside from the evidence of appellant, the record showed without controversy that he was acting a leading part in the tragedy in which the life of deceased was taken, and there was no other evidence tending remotely to suggest a different motive on his part from that which actuated the Hays boys. Being unable to agree with the contention of appellant as to the error, and this being the only question raised in the motion for rehearing, same will be overruled.

*Overruled.*