SIMEON HAYS v. THE STATE.

No. 5998.   Decided October 26, 1921.

**1.—Murder—Principals—Charge of Court—Rule Stated.**

Where, upon trial of murder, the evidence showed that the defendant was present when the deceased was killed, knowing the unlawful purpose of his companions who also engaged in the killing, he aided and encouraged them, the court properly charged on the law of principals under Article 78, Penal Code.   Following Middleton v. State, 86 Texas Crim. Rep., 307.

**2.—Conspiracy—Circumstantial Evidence—Intent.**

A conspiracy may be proved by circumstantial evidence, and the intent to kill, etc., may be shown by defendant's conduct at the time of the homicide.   Following Cox v. State, 8 Texas Crim. App., 254.

**3.—Same—Conspiracy—Evidence—Rule Stated—Res Gestae—Co-conspirator.**

Where there is *prima facie* evidence of a conspiracy, the acts and declarations of each conspirator done in the prosecution and furtherance of the common design, or which form a part of the *res gestae* of any act designed to advance the object of the conspiracy which is already in evidence, are admissible against any or all of the conspirators.   Following Richards v. State, 53 Texas Crim. Rep., 400.

**4.—Same—Declarations and Acts of Co-Defendant—Evidence.**

The evidence of the acts and declarations of a co-defendant in his conduct towards deceased before leaving the place of the dance was properly

received, as they were circumstances supporting the inference that he heard it. Besides, this was shown by other testimony.

**5.—Same—Evidence—Other Offenses—Co-Conspirators—Res Gestae—Intent.**

That the conduct of co-defendants in furtherance of the common design constituted other violations of the law, did not render it unavailable to the State, under the rule of excluding extraneous offenses, they being part of the *res gestae* and showing the intent. Following English v. State, 34 Texas Crim. Rep., 190, and other cases.

**6.—Same—Manslaughter—Charge of Court—Precedent.**

Where, upon trial of murder, the charge of the court on manslaughter, when considered in the light of the record and other paragraphs of the charge, and that of former precedent, the same was sufficient, there was no reversible error. Following Moore v. State, 88 Texas Crim. Rep., 624, 228 S. W. Rep., 221.

**7.—Same—Requested Charges—Converse Proposition—Principals.**

Where the requested charges offered, under the subject of manslaughter, were but a repetition of matters covered by the main charge, and not adapted to supply any defect in the charge upon that subject due to an inadequate submission of the converse of the proposition, therein contained, they were correctly refused, and the same may be said on the subject of principals.

**8.—Charge of Court—Self-Defense—Abandonment—Manslaughter—Requested Charge.**

In connection with the charge upon self-defense, and manslaughter, there was no impropriety in charging upon the law of abandonment of the difficulty by the deceased; however, upon another trial the question of self-defense which undertakes to state the circumstances upon which the deceased might have been found to have acted in self-defense, should be omitted, and the charge on continuing danger, under the facts should be submitted, but not in the language contained in the requested charges.

**9.—Same—Charge of Court—Self-Defense—Defense of Another—Reversible Error.**

Where, upon trial of murder, the court gave a charge applying the principle of self-defense to the theory arising from the evidence, that if defendant took part in the homicide, and was acting in defense of his brother who had been fired upon and shot by the deceased, he should be acquitted, but the evidence raised the issue of self-defense applicable to the defendant himself, and the court failed to charge on the law of self-defense applicable to the defendant in defending his own person, the same was reversible error. Following Knight v. State, 84 Texas Crim. Rep., 396, and other cases.

**10.—Same—Defendant as a Witness—Charge of Court—Practice in Trial Court—Bill of Rights.**

Our statute gives the defendant the privilege of testifying in his own behalf, and when he does so, he becomes a witness and is subject to all the tests of truth that are applied to other witnesses, and when he testifies to facts which, if true, excuse or mitigate the offense, with which he is charged, no judge has the authority to decide that his testimony is false, but the jury must pass upon its credibility under a proper charge of the court. This is demanded under the Bill of Rights which provides the right of trial by jury to remain inviolate.

Appeal from the District Court of Bowie. Tried below before the Honorable P. A. Turner.

90 T. C.—13

Appeal from a conviction of murder; penalty, fifty-five years imprisonment in the penitentiary.

The opinion states the case.

*Sid Crumpton,* and *L. E. Keeney,* for appellant.—On question of manslaughter: Guffey v. State, 8 Texas Crim. App., 201; Moore v. State, 26 id., 333; Young v. State, 41 Texas Crim. Rep., 442; Moffatt v. State, 35 id., 257; Williams v. State, 40 id., 565; Harrison v. State, 47 id., 401.

On question of principals: Parnell v. State, 50 Texas Crim. Rep., 423; Chambers v. State, 46 id., 66; Hargrove v. State, 33 id., 431; Snell v. State, 29 Texas Crim. App., 240; Loessin v. State, 46 id., 553; Pedro v. State, 48 id., 406.

On question of self-defense: Glover v. State, 33 Texas Crim. Rep., 227; Johnson v. State, 132 S. W. Rep., 804; Swain v. State, 48 Texas Crim. App., 90; Lundy v. State, 127 id., 1034.

On question of conspiracy: Lara v. State, 48 Texas Crim. Rep., 571; Webb v. State, 47 id., 307; Goodman v. State, 47 id., 388; Williams v. State, 38 id., 128; Walton v. State, 41 id., 459.

*C. M. Cureton,* Attorney General, for the State.—On question of dying declarations: Burrell v. State, 18 Texas, 721; Black v. State, 1 Texas Crim. Ap., 384; Taylor v. State, 38 Texas Crim. Rep., 552; Brookins v. State, 158 S. W. Rep., 522.

MORROW, PRESIDING JUDGE.—The conviction is for the offense of murder with punishment fixed at confinement in the penitentiary for a period of fifty-five years.

Simeon Hays, Tom Hays and Boy Barnes were charged by separate indictments with the murder of Tom Smith. Barnes was also charged with an assault with intent to rape on account of acts done in the same transaction.

The facts in the main are found in Barnes v. State, 232 S. W. Rep., 312, and 88 Texas Crim. Rep., 500, 228 S. W. Rep., 225, and in Tom Hays v. State, not yet reported.

Simeon Hays was present when the deceased was killed. There is evidence that, knowing the unlawful purpose of Tom Hays and Barnes, he aided and encouraged them. The propriety, therefore, of charging on the law of principals is not open to question. Penal Code, Art. 75; Middleton v. State, 86 Texas Crim. Rep. 318.

The contention that the phase of the law of principals set forth in Article 78 of the Penal Code, that is, that one is a principal who advises or agrees to the commission of an offense and is present when it is done, should not have been embodied in the charge, is not sound, in our judgment.

Conspiracy may be proved by circumstances, and it is generally necessary to do so. Wharton's Crim. Ev., Vol. 2, Sec. 888; Underhill on Crim. Ev., Sec. 491. It is true that it cannot be proved by the acts or declarations of others in the absence of the accused. Wharton's Crim. Ev., Vol. 2, Sec. 1673; Cox v. State, 8 Texas Crim. App. 254; Blain v. State, 33 Texas Crim. Rep. 236.

The conduct of appellant and his two companions was, according to the State's evidence, directed to the accomplishment of the same unlawful object, and their conduct was sufficient to support the finding of the jury that they had agreed to take the life of Smith. Underhill on Evidence, Sec. 491; Wharton on Homicide, 3rd Ed., Sec. 441. The evidence of the acts and declarations of Boy Barnes in his conduct toward deceased before leaving the place of the dance was properly received as there were circumstances supporting the inference that he heard it. Its admissibility, however, would be supported by his subsequent conduct, as described by the State's witnesses, in advising and taking part in the commission of the homicide.

"When the concert of action is once established, all of the facts and circumstances which preceded and connectedly lead up to the homicide, are relevant." (Wharton's Crim. Ev., Vol. 2, p. 1732).

Kipper v. State, 45 Texas Crim. Rep., 379. Where there is *prima facie* evidence of a conspiracy, the acts and declarations of each co-conspirator "done in the prosecution and furtherance of the common design, or which form a part of the *res gestae* of any act designated to advance the object of the conspiracy which is already in evidence, are admissible against any or all of the conspirators." Underhill on Crim. Ev., Sec. 492; Richards v. State, 53 Texas Crim. Rep. 400.

Appellant's intent to kill the deceased and his intent to join his companions in so doing is inferable from his conduct at the time of the homicide, as described by the eyewitnesses and the dying declaration of the deceased. The acts of his companions, which were proved, were relevant. They were indicative of a purpose to bring on a difficulty that might be used as a pretext for slaying the deceased. That the conduct of Barnes and Tom Hays in furtherance of the common design constituted other violations of the law did not render it unavailable to the state under the rule excluding extraneous offenses. These are not excluded where they are part of the *res gestae* or where they tend to show the intent. Wharton's Crim. Ev., Vol. 1, Sec. 33, p. 121; English v. State, 34 Texas Crim. Rep., 190; Crews v. State, 34 Texas Crim. Rep. 533. There was joint and several responsibility for the individual acts· of each of the conspirators in executing the common purpose. Wharton on Homicide, Sec. 418 to 443.

The criticisms of the charge on principals are addressed, not to the manner of submitting the law but to the fact that it was submitted at all. No defects in the charge on the subject have been pointed out in the exceptions to the charge, and we have discerned none. See Middleton v. State, 86 Texas Crim. Rep. 319.

The charge on manslaughter is assailed. In it the court said:

"Now, if you believe from the evidence that the defendant heard one or more pistol shots and he looked and saw or learned that the deceased, Tom Smith, had shot his brother, Tom Hays, and that he knew nothing of the circumstances that caused Tom Smith to shoot his brother," etc.

The same legal question has arisen before. See Pitts v. State, 29 Texas Crim. App., 374; Moore v. State, 88 Texas Crim. Rep., 624, 228 S. W. Rep., 221.

"When the issues of self-defense, manslaughter, and murder are raised by the evidence, it is often difficult to so frame the charge to the jury that it will not trench upon the rule touching the burden of proof, and at the same time safeguard the rights of the accused. This difficulty grows out of the fact that the lower grades of homicide are included in an indictment for murder, and these lower grades, in a case involving the issues mentioned, occupy both an offensive and a defensive relation to the case. The jury is called upon to determine whether the homicide was lawful or unlawful. The burden is upon the state to prove, beyond a reasonable doubt, the facts which show it to be unlawful and the facts which bring it within the higher, rather than the lower, grade of offense included in the indictment. To bring an unlawful homicide within the grade of manslaughter as against that of murder, the burden is not upon the accused to prove the mitigating circumstances, but he is entitled to have the offense mitigated to the grade of manslaughter, if there is evidence which produces in the minds of the jury a reasonable doubt as to which of the grades, the higher or lower, he should be convicted." (Moore v. State, *supra*.)

Considered in the light of the record and other paragraphs of the charge, we think the complaint of the charge on manslaughter is without merit.

The special charges offered on the subject of manslaughter we conceive to be but a repetition of matters covered by the main charge, and not adapted to supply any defect in the charge upon that subject due to an inadequate submission of the converse of the propositions therein contained; and the same may be said of the special charges upon the subject of principals. If the charge should be rewritten in its present form upon another trial, and special charges should be presented or exceptions filed pointing out the propriety of supplementing the charge with instructions concerning the converse of the matters therein contained, the court, no doubt, responding to the rule upon the subject, would not fail to comply with it and so amend the charge as to fully protect the rights of the accused.

In connection with the charge upon self-defense and manslaughter, there was no impropriety in charging upon the law of abandonment of the difficulty by the deceased. We think, however, that upon another trial, the paragraphs of the charge which undertakes to state the circumstances on which the deceased might have been found by

the jury to have acted in self-defense should be omitted and in lieu thereof a proper charge framed and given upon the subject of provoking the difficulty. That issue was clearly raised by the testimony touching the testimony of Tom Hays in assaulting the deceased, and its bearing upon the case of the appellant seems obvious. In connection with these issues also, the right to continue to shoot during the reasonably apparent continuance of 'the danger would be appropriate though the special charge upon the subject requested by appellant did not, in our judgment, correctly submit the issue, and its refusal in the form presented was not error. It was broad enough to make justifiable the acts imputed to the appellant by the State's witnesses after the deceased had been wounded to helpnessness and placed in Reeder's car. Appellant having denied these acts, of course, that phase of the evidence would have to receive attention, but if, as detailed by the State's witnesses, he inflicted the fatal wounds upon the deceased after he was obviously helpless or consented to or encouraged their infliction, we discern no theory upon which his conduct could have been justified.

The testimony of the State's witnesses touching the conduct of the parties at the immediate time of the shooting was to the effect that appellant's car, after leaving the dance, passed that in which the deceased and his companions were riding and stopped at a bridge in a manner preventing the progress of the Reeder car in which the deceased was riding; that while it stopped Barnes engaged in abusive language and insulting conduct toward the deceased and his girl companions and that the conduct of Tom Hays was offensive toward Edith Tittle; that after leaving the bridge, appellant's car, after going some distance, stopped again, and as the party in Reeder's car attempted to pass, they were ordered to stop by the appellant and his companions who were standing in the road, and that after the car was stopped, Tom Hays, while the deceased was sitting in the car, assaulted him, choking him and hitting him with his fist; that deceased fired and ran; that appellant and his two companions pursued him and during the pursuit shots were fired and deceased fell wounded. While upon the ground, he was assaulted by the appellant, who also told his companions that Smith was not dead and to shoot him again; that afterwards the deceased was borne by the appellant and Reeder to Reeder's car; that Reeder was prevented by Barnes from bearing the deceased away; and he was later found with numerous wounds upon his person inflicted by a pistol, knife and bludgeon, in the infliction of which deceased, in his dying declaration, declared appellant took part.

Appellant testified, in substance, that he and deceased were friends; that he had no knowledge of any ill-feeling existing between the deceased and Barnes or Tom Hays; that he heard none of the conversation between Barnes and the deceased at the dance, nor when the car stopped on the first occasion; that the next stop of his car was be-

cause of trouble, and Reeder's stop was voluntary; that after Reeder's car stopped, Tom Hays remarked that he was going to ask Tom Smith what "he had it in for him about;" that appellant advised him to refrain from doing so, and upon Tom's declining, the appellant requested him (Tom) to leave his pistol, which was done; that after Tom reached Reeder's car, the appellant heard blows and a gun shot; that with Tom's pistol in his hand he rushed to Reeder's car from which the shots came, and upon reaching it, Smith (the deceased) said: "There is the other son-of-a-bitch. I want to kill him too," and fired, the shot grazing appellant's face; that at that moment Tom Hays exclaimed that he was shot and staggered as though he was falling; that he recovered and took the pistol from appellant. Smith got out of the car on the opposite side, and appellant upon going around it, found Smith lying upon the ground, Barnes and Tom Hays and Reeder nearby. Smith raised up on his elbow with his gun in his hand, and appellant exclaimed: "Look, Tom, the son-of-a-bitch will shoot you again," and took the gun from Smith's hand. Appellant denied that he kicked or used any violence upon Smith while he was on the ground, further than taking the pistol from his hand. He said that he and Reeder put Smith in Reeder's car, and that on doing so, he again heard his brother's complaints and observed his bloody condition from the wound upon him, and acting upon the impulse, struck Smith on the head with the flashlight, which, by the one blow, was broken. Appellant denied cutting or otherwise wounding Smith or shooting at him at any time, and declared that he had had no previous knowledge of any ill-feeling between Smith and his brother, Tom Hays.

The court gave a charge applying the principle of self-defense to the theory arising from the evidence that if appellant took part in the homicide, he was acting in defense of his brother, Tom Hays, who had been fired upon and shot by the deceased. The court failed to charge on the law of self-defense applicable to the appellant in defending his own person. In our opinion, this issue was definitely raised, and it was the imperative duty of the trial court to submit it to the jury for solution. Of course, if the deceased was assaulted by Tom Hays in pursuance of a conspiracy to which the appellant was a party, he would be responsible for the death of Smith, and there would be no justification. The question would be the grade of the offense and the amount of the punishment. So the same would be true without an agreement in advance, if he, knowing the unlawful intent of his companions, to kill the deceased, aided or encouraged them in so doing. These matters were presented to the jury. Appellant testified, however, denying the conspiracy. He denied any knowledge of the unlawful acts of Tom Hays or Roy Barnes and claimed that the deceased fired at him and that the bullet grazed his face, deceased, at the time, expressing the intent to kill the appellant. The State's witnesses claimed that after the shots were fired by the

deceased, appellant pursued and shot him and subsequently cut him with a knife. This appellant denied. The deceased, under the testimony as we understand, was shot and fell within a few feet of the automobile in which he was sitting at the time he fired at Tom Hays, at the time when appellant claims he fired at him. Appellant at the time, according to his testimony, had Tom Hays' pistol. If, as claimed by the State's witnesses, the appellant fired at Smith and this was after Smith fired at him or while he was in the act of doing so, the question whether in so firing he was acting in his own defense was one which it was his right, under the law, to have submitted to the jury under proper instructions. His right and his desire that it be accorded him was brought to the attention of the trial judge both by specific exception to the main charge and a special charge on the law of self-defense, as applied to the appellant. The fact that the court instructed on the right to defend his brother does not answer the complaint that the jury was not instructed that he had a right to defend himself. Parnell v. State, 50 Texas Crim. Rep. 420; Knight v. State, 84 Texas Crim. Rep. 396.

The charge proceeds upon the theory apparently that the evidence that deceased shot at Tom Hays raised an issue of self-defense in favor of Tom Hays, and also an issue as to the right of appellant to protect Tom Hays, and ignores the theory arising from the evidence that the deceased, not only shot at Tom Hays, but shot at the appellant, and that appellant's participation in the assault on Smith, if any, was subsequent or co-incident with Smith's attack upon him. Although the trial judge may have believed that the appellant was not telling the truth in stating that the deceased shot at him, or may have deemed it certain that the jury would so conclude, he was not warranted in refusing to pass the question on to the jury by an appropriate charge. The mandate of our law that controverted questions of fact involving the liberty of the accused must, upon his proper demand, be determined by the jury, is absolute. It proceeds upon the theory that the jury can be trusted, under proper instructions, to take care of the rights of both the state and the accused. Our statutes give the accused, in a criminal case, the privilege of testifying in his own behalf. When he does so, he becomes a witness and is subject to all the tests of truth that are applied to other witnesses, and when he testifies to facts which, if true, excuse or mitigate the offense with which he is charged, no judge has the authority to decide that his testimony is false. The jury must pass upon his credibility. By giving the testimony and seeking a charge on it, he invokes that phase of the bill of rights which says: "The right of trial by jury shall remain inviolate," and it becomes the duty of the trial court to accord the right, and upon its denial, the duty of the reviewing court to correct the error.

Without giving the details concerning other complaints relating to the incidents of the trial, we refer to the opinions in the com-

panion cases of Boy Barnes and Tom Hays in which all questions pertaining to this case which are likely to occur on another trial have been the subject of review and decision. The learned trial judge, having, in our judgment, fallen into error in refusing to instruct the jury upon the issue of self-defense, we feel that in the performance of our duty, we have no choice other than to order that the judgment of conviction be reversed and the cause remanded for another trial.

*Reversed and remanded.*