## Carlos Galindo v. The State.

No. 16184.   Delivered October 25, 1933.
State's Rehearing Denied December 20, 1933.
Reported in 65 S. W. (2d) 500.

The opinion states the case.

*H. K. Harelson,* of Lubbock, and *J. D. Sutherland,* of San Diego, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, death.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Jesus A. Benavides by shooting him with a gun.

The companion case of Benavides v. The State, is found reported in 60 S. W., Second Series, at page 436. In the companion case Maria Benavides was convicted of being an accomplice to the crime of murder, it being alleged in the indictment that Carlos Galindo (the appellant in the present case) was the principal offender.

Deceased was night watchman. On the night of May 3, 1932, he was found lying outside the gate of the residence of one Garcia, mortally wounded. A shot had taken effect in his right side. Upon being questioned, he stated that he did not know who shot him. There were tracks in the vicinity of Garcia's premises which led to a creek near the scene of the homicide. A gun was found in the creek near the tracks, which, according to the testimony of a witness for the state, had been recently possessed by appellant.

It was the theory of the state that Maria Benavides had entered into an agreement with appellant whereby he was to kill

deceased in consideration of the payment to him of a part of the proceeds of insurance policies on the life of deceased; and that he killed deceased pursuant to this agreement.

Deceased was Maria Benavides' husband. In March, 1931, she conferred with an insurance agent relative to securing a policy on the life of deceased. Later the agent talked to deceased about the policy, and was advised by him that he did not desire insurance of any character. In May, 1931, Maria Benavides presented to the agent an application for a policy in the sum of one thousand dollars on the life of deceased. This application was purportedly executed by deceased. However, the state's proof was to the effect that the signature on the application was not that of deceased. The testimony of the agent was to the effect that deceased had advised him at the time he delivered the policy to him that he did not want it, as he felt that some one might want to take insurance on his life and then have him killed. The policy was finally delivered, and was in effect at the time of the death of deceased.

Several witnesses for the state testified that Maria Benavides endeavored to hire them to kill deceased. These witnesses, according to their testimony, told her that they would have nothing to do with the matter. She then insisted that they procure someone who would be willing to kill deceased. Again, according to the version of state's witness Praxedis Arredondo, shortly prior to the death of deceased, Maria Benavides stated to him that she had entered into an agreement with appellant whereby he had obligated himself to kill deceased for one hundred and fifty dollars. One of the witnesses declared that Maria Benavides had requested him to bring appellant to her house. He said that he went with appellant to her home and remained there more than a hour while she and appellant conversed out of his presence and hearing. He said, further, that appellant stated to him when they left the house that he had entered into a business arrangement with Maria Benavides. There was testimony on the part of the state to the effect that Maria Benavides had made an effort to have deceased poisoned.

Praxedis Arredondo, testifying for the state, declared that, in response to requests on the part of Maria Benavides, he had gone to her home on several occasions about a month prior to the death of deceased. He said that during these visits Maria Benavides had asked him to kill deceased, and that when he declined, she asked him to find someone who would agree to commit the offense. He testified that he told her that he was afraid to kill deceased. He said that on each occasion he refused to have anything to do with the matter. He admitted

that on one occasion he had carried a note to one Biggs for Maria Benavides after she had stated to him that Biggs might be willing to kill deceased. He testified that Biggs opened the note in his presence, and that seeing his (the witness') name written on the note, he took a pencil and erased his name, telling him that he did not want his name in it. He testified, further, that after Biggs had read the note he told him (the witness) to advise Maria Benavides that he would not kill deceased; that he agreed to do this, and did tell her that Biggs was not willing to kill deceased; that she told him that she did need him any more, as she had procured the services of appellant, who had agreed to kill deceased for one hundred and fifty dollars. The witness testified, further, that after the homicide, appellant stated to him that, pursuant to his (appellant's) agreement with Maria Benavides, he had killed deceased. He said appellant told him not to tell about the matter and stated to him that he would kill him if he gave him away. He said that he agreed not to divulge the matter to the authorities. The witness testified that he went to one Saurez in Laredo on a mission for Maria Benavides, and that, seeing Saurez, he told him that Maria Benavides had sent him word that appellant had killed deceased; and, further, that she had requested that he tell him to destroy any communications he had from her and to remain in Mexico.

Testifying in his own behalf, appellant denied that he had entered into a conspiracy with Maria Benavides to kill deceased. He admitted that she had called him to her home on one occasion and endeavored to employ him to kill deceased, but declared that he had flatly refused to have anything to do with the matter. He testified, further, that on the night of the homicide he was at home. His testimony on this point was corroborated by that of his wife. He denied that the gun found in the creek had been in his possession, declaring that the state's witness who testified that the gun had been loaned to him by her husband had given false testimony. Further, he denied that he had stated to Praxedis Arredondo that he had killed deceased. In short, his testimony was a denial of any participation in the transaction resulting in deceased's death.

It appears that the owner of the gun found in the creek had been arrested after the death of deceased, and placed in jail. While in jail he committed suicide. Moreover, it appears that the wife of this man declared upon the trial of the present case that her husband had loaned the gun in question to appellant; she being the only witness who placed appellant in possession of the gun. She admitted, however, that she had testi-

fied on the trial of Maria Benavides that the gun did not belong to her husband, and that she knew nothing about it.

Bill of exception No. 9 presents the following occurrence: While state's witness Praxedis Arredondo was being examined by the district attorney he was required to testify, over appellant's objection, that about a week before the homicide Maria Benavides called him to her house and advised him, in effect, that appellant had entered into an agreement with her whereby he was to kill deceased. We think appellant's objection was well taken. The declarations constituted, in our opinion, simply a narration of the fact that a conspiracy had been entered into between appellant and Maria Benavides to kill deceased. See Hays v. State, 236 S. W., 463; Newsome v. State, 249 S. W., 477; Hill v. State, 18 S. W. (2d) 1086; Choice v. State, 106 S. W., 387; and Benavides v. State, supra. The statements the witness Praxedis Arredondo attributed to appellant appear to have alone relieved the court of the necessity of submitting an instruction on circumstantial evidence. In short, with such statements eliminated, the state would have relied entirely upon circumstantial evidence to establish a conspiracy and prove that appellant killed deceased. Our statement of Praxedis Arredondo's connection with the transaction would indicate that he was not blameless. It is not clear that he was not an accomplice as a matter of law. However, the appellant lodged no exception to the charge on the ground that the court failed to instruct the jury that the witness was an accomplice. The hearsay declaration tended to corroborate the testimony of Arredondo and, if believed by the jury, was destructive of appellant's testimony to the effect that he had entered into no conspiracy with Marie Benavides to kill deceased. In the state of the record the inadmissible declaration was highly prejudicial. The state's attorney before this court virtually concedes that the matter presents reversible error.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.