O. D. STEVENS V. THE STATE

No. 17777.   Delivered December 18, 1935.

The opinion states the case.

*Mays & Mays, Tom McMurray,* and *Arthur Lee Moore,* all of Fort Worth, and *Henry Stevens,* of Magnolia, Arkansas, for appellant.

*Will R. Parker,* Criminal District Attorney, and *H. C. Wade,* Assistant Criminal District Attorney, both of Fort Worth, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of murder and his punishment was assessed at death. It is alleged in the indictment that on the 8th day of July, 1933, appellant did with malice aforethought voluntarily kill Harry Rutherford by shooting him with a gun.

Appellant bases his contention for reversal of this case upon the following grounds: First, because the court erred in overruling his motion to strike out all testimony relating to all the acts and declarations made by W. D. May in his, appellant's, absence as well as all criminative circumstances discovered on May's premises because the same were not legally admissible against him in the absence of testimony showing the existence of a conspiracy between himself and May to commit the alleged offense. Second, because the court erred in overruling his objection to the court's main charge in that the court failed to instruct the jury that they could not consider the acts and declarations of May outside of the presence of the appellant as

any evidence against him unless the jury believed from the evidence beyond a reasonable doubt that there was a conspiracy between appellant and May to kill the deceased. Third, because the court overruled appellant's objection to the court's main charge in failing to tell the jury that any acts or declarations, of May made out of the presence of the defendant are not evidence of the existence of a conspiracy. Recognizing the soundness of the proposition advanced we deem it necessary to review the salient facts and circumstances proven at the trial to determine the correctness of this position.

The record shows that on the 21st day of February, 1933, May, the appellant, and two of the deceased parties robbed the United States mail in the city of Fort Worth, Texas, and obtained approximately seventy thousand ($70,000.00) dollars in money. Appellant was made the custodian of the stolen money. Sometime after the robbery he gave unto the deceased persons a part of their share of the loot but declined to give them the balance, because, according to his statement to Weldon Routt, they spent it too freely; that if he gave them any more, their lavish expenditures of the money might lead to the arrest of all parties connected with said offense.

The testimony also shows that deceased parties made frequent trips to the home of the appellant, no doubt with the view of pressing their demand for the balance of their share of the stolen money. On Saturday preceding the night of the alleged homicide the appellant, May, and M. T. Howard, and the three deceased parties spent the afternoon in the town of Handley. The appellant and Howard were seen in company with the deceased persons. They ate and drank with them and the appellant was seen talking to them on the streets by three young boys, who stopped to listen. Appellant told them to run along, that he was talking business. When the appellant left Handley between sundown and dark, the three deceased parties in their car followed him, going in the same direction. On that night May took his entire family from his home to the home of Mrs. Brown in the city of Fort Worth where he left them and returned to his home; and about midnight he came up the private lane between his home and that of the appellant to the home of Mr. Wynn. On said night the appellant also took his entire family from his home and carried them to a show in the town of Handley where he left them and went somewhere on some undisclosed mission. On that night Howard was also away from his home.

On said night there was a dance in progress at the home of

Mr. Wynn, which was located some three hundred yards north of the appellant's home. Some of the persons who attended the dance heard shooting in the direction of the appellant's home and that of May. After the shooting a truck came from the direction of the home of appellant and that of May going out into the highway and turned west. This truck had a broken windshield and a few minutes later May came from the same direction, stopped at Wynn's home, borrowed a light bulb, and then proceeded west down the highway.

The next day the clothing, watches, and other wearing apparel of the deceased were found in a branch of the Trinity river wrapped in hog-wire similar to that found on the premises of May. On the following Wednesday the nude bodies of the three deceased persons were found in the Trinity river, some three miles further up the river, wrapped in hog-wire similar to that found near the premises of May and appellant; and the bodies were weighted down with two sacks of Lone Star cement similar to and bearing the same number as that found on the premises of May. May's truck had a broken windshield in the bottom of which, and also on the hub-cap, human blood was found. A search of May's premises disclosed a pair of trousers which had been recently pressed and upon the belt on these trousers human blood was discovered. From the foregoing circumstances a jury may reasonably draw the inference that the deceased persons met their death at or near the home of appellant; and the further inference might be drawn from said facts that the deceased persons were invited out to appellant's premises under the pretense of making a division of the loot. An examination of the dead bodies disclosed the fact that one was shot in the head with a lead bullet of a certain size, another was shot in the head with a steel-jacket bullet of a certain size, and another was shot in the head with buckshot, which together with the testimony of some of the parties who attended the dance at Mr. Wynn's home that night, that they heard a volley of shot in the direction of appellant's home, would support the inference that all three of the deceased persons were shot simultaneously by three different persons.

Some two or three weeks prior to the alleged homicide May observed some parties on the premises of the appellant. He asked Weldon Routt to go with him and to assist him in making the parties leave. They drove around to the back of May's premises where May borrowed a pistol from Routt and then went through the timber in the direction of the appellant's home. Routt was instructed to go to the end of the private

lane to inform appellant in case he came along of what occurred When May returned he told Routt that he got a glimpse of two of the parties; that they were the persons who assisted him in the mail robbery. About that time appellant and another party, whose identity is not disclosed, purchased two shotguns for which appellant paid with a hundred dollar bill.

On Sunday afternoon the appellant and his family and M. T. Howard and his family took dinner with Weldon Routt in the town of Handley. Appellant left the Routt home by himself, went to town, and while up town met Mrs. Jack Sturdivant and Mrs. J. B. Rutherford, the wives of two of the deceased persons, who inquired of him if he had seen their husbands. He told them that he saw them on Saturday afternoon; that they were drunk. They then inquired for M. T. Howard. He told them that he did not know whether he had a telephone but that he would go look for him. They suggested that they would be glad to go with him in search of Howard but he demurred and instructed them to go out to the tourist camp, where he would later meet them; and where he and Howard in less than thirty minutes did meet them. When the women asked Howard in the presence of the appellant if he had seen their husbands, he replied, "Yes, I saw them yesterday afternoon about six p. m. They were drunk and going in the direction of Dallas."

The appellant did not testify at the trial but he offered testimony showing that he was in the city of Fort Worth from nine p. m. until eleven or eleven-thirty p. m. on the night of the alleged homicide. It occurs to us that the circumstances proven at the trial were sufficient to justify a jury in concluding that a conspiracy existed between the appellant and May to commit the offense charged. They, the appellant and May, were neighbors, they were close friends, and they were partners in a former crime of robbery, a circumstance tending to show a conspiracy. On the fatal night May carried his entire family to Fort Worth where he left them and returned to his home. Appellant also carried his entire family to a show at Handley where he left them and went somewhere on some undisclosed mission. It may not be an uncommon coincidence that both carried their entire family away from home on the fatal night but .it is, to say the least, rather uncommon coincidence that they should both leave their families and remain away until sometime after midnight. Again the next morning before sunup appellant and May, after having been out the night before until after midnight, were seen in the appellant's car coming up the lane leading from their. respective homes to the high-

way. Between seven and eight o'clock they were again seen in the same car going in the same direction. What urgent business caused them to arise so early from their morning slumbers is not disclosed by the record nor at what time they agreed to meet so early on Sunday morning to go somewhere on some undisclosed mission. This is only another circumstance which tends to show their acting together with common intent and common purpose, besides the evidence showing a motive and opportunity on the part of May and appellant to commit the offense for which appellant was on trial. Having reached the conclusion that the circumstances above pointed out were such that a jury was authorized to draw the inference that a conspiracy existed between them, therefore, it is obvious that the acts and declarations of May as well as the criminative circumstances discovered on May's premises were admissible in evidence (at the trial of the appellant). However, the court should have responded to the appellant's objection to the court's charge and instructed the jury that unless they found from all the facts and circumstances beyond a reasonable doubt that a conspiracy existed between the appellant and May to commit the offense for which appellant was on trial, that they could not consider the acts and declarations of May in the absence of appellant and the criminative circumstances found on the premises of May as any evidence of appellant's guilt. The court should also have in connection therewith instructed the jury that the acts and declarations of May in the absence of the appellant could not be used by them as evidence to show the existence of a conspiracy between the appellant and May. In support of the view herein expressed we refer to the case of Anderson v. State, 224 S. W., 782, and the authorities therein referred to. See also Harris v. State, 31 Texas Crim. Rep., 411; Stevens v. State, 59 S. W., 545; Chapman v. State, 76 S. W., 477.

It is a well settled rule of law that the acts and declarations of a co-conspirator cannot be used for the purpose of showing the existence of a conspiracy, the conspiracy must be proved aliunde. In the case of Loggins v. State, 8 Texas App., 434, the court said: "A conspiracy, like crime itself, is susceptible of proof by circumstances, which are addressed to the trial judge in the first instance, when called to rule upon the competency of the testimony. And after the acts or declarations of a co-conspirator not upon trial are admitted in evidence, and the evidence as to the existence of a conspiracy at the time such acts were done and such declarations were made is not

conclusive, the question as to the existence of such conspiracy at the time of the acts or declarations should be submitted to the jury under appropriate instructions, with directions to disregard such evidence in case the conspiracy had not been established to their satisfaction."

See, also, Hill v. State, 18 S. W. (2d) 1086; Benavides v. State, 60 S. W. (2d) 436; Hays v. State, 236 S. W., 463.

It occurs to us that legal propositions advanced by appellant in his objections to the court's charge were rights to which the appellant was entitled but were not accorded to him by the court in his instruction to the jury. Hence, it is apparent that the court committed reversible error. The other matters complained of do not disclose any error.

It is, therefore, ordered that the judgment of the trial court be and the same is reversed and remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.