### D. COLTER v. THE STATE.

*No. 1268.    Decided March 10th, 1897.*

#### 1.   Robbery—Indictment—Description of Money.

An indictment for robbery sufficiently described the money taken as, "Sixty dollars and fifty cents in money which passed current as money of the United States of America of the value of sixty dollars and fifty cents." Following, Thompson v. State, 35 Tex. Crim. Rep., 511.

#### 2.   Same—Allegation and Proof.

Where the indictment alleged that the money taken was so many "dollars in money which passed as current money of the United States of America." Held: That the testimony of the party robbed to the effect that the property taken from him was "money". "I had the money in bills in my watch pocket". "I had nothing but money on my person," etc. "I know I had this money in bills", taken in connection with the testimony of an accomplice, "We got his money from him", is sufficiently responsive to the allegation in the indictment.

#### 3.   Witness—Competency—Obligations of an Oath—Religious Belief.

Our law does not require any character of religious belief in order to render a witness competent to testify. It is only required under our Constitution and statutes

that the witness shall understand the nature and obligation of an oath. An Atheist or Deist, who understands the obligations of an oath, is competent when sworn, or when he affirms, in the manner most binding upon his conscience.

### 4. Same.

If a witness understands that an oath or affirmation binds his conscience to speak the truth, the whole truth, and nothing but the truth, in regard to the matter under investigation, and that it is wrong to tell a lie; and that for a violation of this duty the law imposes a punishment as for perjury, he is competent.

### 5. Robbery—Evidence.

On a trial for robbery, evidence that some months prior to the alleged offense defendant worked for wages, was irrelevant.

### 6. Same—Principals—Charge.

On a trial for robbery, where it appeared that defendant and three others were engaged in the commission of the offense, two of the party going ahead of the prosecutor, and defendant and the other behind. That the party ahead intercepted, and one of them knocked the prosecutor down and robbed him, and that defendant and his comrade came up just as they finished. All four of the parties ran off together. Held: The court did not err in charging the jury, in effect, that all persons acting together in the commission of an offense were principals; that they could act together whether bodily present or not, provided they acted under an agreement or combination to commit the offense, and the offense was committed in pursuance of a common intent and formed design, each party performing his part of the act in the execution of the common design, the part so acted being necessary to the completion and consummation of the offense.

### 7. Same.

Where the court, upon the facts stated above, further charged the jury, "If under the evidence there is, in your minds, a reasonable doubt as to the presence of the defendant at the place where the offense was committed, at the time it is alleged to have been committed, and there is also a reasonable doubt in your minds as to whether defendant was a principal in the commission of said offense, etc., then you should acquit the defendant." Held: Sufficient, as a presentation of defendant's theory.

### 8. Same—Charge—Circumstantial Testimony.

On a trial for robbery, where there is positive evidence of defendant's participancy in the robbery, a requested instruction on circumstantial testimony was properly refused.

### 9. Recalling Witnesses—Verdict—Presumption as to.

Where the court had sent for witnesses, who had been recalled to testify before the jury, but, pending their appearance, the jury brought in their verdict. Held: It will be presumed that, in the meantime, the memory of the jury had been refreshed as to what the witnesses had testified and no longer desired to have them reiterate their testimony.

APPEAL from the Criminal District Court of Dallas. Tried below before Hon. CHARLES F. CLINT.

Appeal from a conviction for robbery; penalty, five years' imprisonment in the penitentiary.

The indictment contained two counts, one for theft from the person, and the other for robbery. Defendant moved to quash the indictment, the main ground of the motion being that the money alleged to have been taken was not sufficiently described. This motion was overruled.

The essential facts in the case are: The proof in substance shows that W. H. Cox visited Dallas about the 15th of October, 1896. He had in his possession about $67 in money and purchased a few articles,

spending several dollars therefor, and then proceeded to visit the Moss Rose Saloon, a shooting gallery, and several other places of entertainment on and near the courthouse square, at times making exhibition of his money. About eight or half past eight o'clock he boarded an electric car for Oak Cliff, where he intended to spend the night with a friend. Joe La Presto, Wyatt, Clark and appellant started on the same car for Oak Cliff. It is shown by the testimony for the State, as well as the testimony of the defendant while on the stand, that the question of robbing Cox of his money was discussed between the parties while en route to Oak Cliff. But appellant says he remonstrated against entering into such a conspiracy and stoutly protested that he had been raised right and never engaged in any business of the kind in his life. It will be observed that Cox asked to be put off at Tyler Station, that when the car stopped, notwithstanding appellant had full notice of the intention to rob him by Wyatt, La Presto and Clark, he also got off the car at the same place. All of the conspirators walked down the track away from the car a piece and engaged in a close conversation. Cox in a half-drunken condition got off the car and was handed his valise and started to the house of his friend. The four conspirators divided into pairs. Clark and La Presto going together, and overtaking Cox knocked him down and the two together proceeded to relieve him of about $60 in money. Just about the time they were completing the offense, Wyatt and appellant came up and they all ran off together. This is made to appear by the testimony of the accomplice, La Presto, and in a measure corroborated by the witnesses, Horan and Chattin; but that all of the parties went on the car to Oak Cliff together and got off at Tyler Station is undisputed. Appellant and Wyatt came back on the car together, appellant wearing La Presto's hat on his return, while it is made clear that he did not wear it to Oak Cliff, the exchange having been made during the time they were there. In less than one hour from the time they left the depot in Dallas, the robbery had been committed, appellant and Wyatt returning on the electric car, and La Presto and Clark boarding a Santa Fe train at the Oak Cliff station and returning to town that way.

Joe La Presto, one of the accomplices to the robbery, turned State's evidence, and a preliminary examination of this witness was had to ascertain whether he was competent and understood the nature and obligation of an oath. The court, after said examination, held him competent and permitted him to testify over defendant's objection.

Appellant offered to prove by witness, Fred J. Shutt, for whom he had worked as a farm hand during the preceding winter and spring; that said Shutt had paid him $15 per month for said services. Appellant offered said testimony in order to show that he was an industrious man and to establish as far as possible in the minds of the jury, the fact that he was a man of fixed industrious character and self supporting by honest industry, and the trial court excluded all testimony tending to show that any consideration for services had been paid appellant

or to show that he (appellant) was an industrious man and had a fixed character as such.

The jury after they had considered of their verdict for twenty-four hours, and still had failed to agree, as to a verdict in this cause, addressed a written statement to the court as shown, to-wit: "This jury can never reach a verdict in this case, the whole thing hinges on the testimony of Horan and Chattin, and they cannot agree as to what their evidence was."

*R. Irving Willmarth,* for appellant.—The court erred in overruling appellant's motion to quash the indictment in this cause for each of the reasons set out in the said motion to quash.

An indictment for robbery must describe with sufficient certainty the property alleged to have been taken, and must allege that the property in question had some intrinsic or relative value. If the property cannot be fully described the allegation should therein appear "That a better description of said property was to the grand jurors unknown."

The indictment charges appellant with the offense of robbing one Cox of $60.50 in money. There is no description in said indictment as to the denomination or kind of money other than that it passed current in the United States of America of the value of $60.50. Of what did the money consist? Was it in one piece or many? bills or coin? treasury notes, or part of one denomination and part of another? These questions would be suggestive to the mind of the person charged with the offense of robbery. Now, the law presumes the defendant to be innocent of the offense charged. To hold that this description of the property sufficiently notifies him of the nature of such charge, must presume his guilt and presume from that fact that he had a knowledge of just what kind of money was intended to be charged and was charged against him. State v. Segermond, 10 Amer. St. Rep., 171.

It is the policy of the criminal law to so charge an offense that if the defendant is acquitted he can more easily plead and show such acquital, if again charged with the same offense. And this practice does not leave it to conjecture alone to determine whether such charge be identical with some previous one, on which an acquittal had been had, but it must be specific to be available. State v. Filney, 38 Kan., 714.

Art. 856, Rev. Stat., Penal Code, defines robbery: "If any person by assault or by putting in fear of life or bodily injury shall fraudulently take from the person or possession of another any property with the intent to appropriate the same to his own use, he shall be punished," etc.

The question is apparent, how shall we construe this statute? What is meant by "any property"? Does it mean property regardless of value? Must not the property taken have some value intrinsic or relative, and must not the value be specifically alleged in the indictment?

2 Bishop's Crim. Law, 7th Ed., Sec. 1156, defines robbery to be: "Larceny committed by violence of the person of one put in fear."

1 Russell, Crimes, Chap. 8, defines robbery to be: "A felonious taking of money or goods of any value from the person of another or in his presence, against his will, by violence or by putting him in fear."

The charge of robbery differs from the crime of theft (larceny) only in this: "In larceny the value must be stated definitely and certainly for two reasons: (1) To fix the crime, and (2), to determine the grade of the offense and fix the punishment; while to constitute robbery it is necessary that the property or thing taken should have either an intrinsic or a relative value." Talley v. State, 1 Tex. Crim. App., 688; State v. Segermond, 10 Amer. St. Rep., 171.

The indictment in this case defines the value of the money alleged to have been taken to be "$60.50 in money which passed current as money of the United States of America of the value of $60.50."

Does this specially allege value relative or intrinsic? Counterfeit bills and Confederate bills residue from the Southern Confederacy of America pass (or passed) current as money of the United States of America of the value stamped on their face, but they have no relative or intrinsic value. State v. Segermond, 10 Amer. St. Rep., 174.

If the indictment allege gold and silver coin or treasury notes, or national bank notes issued by the government of the United States it would be sufficient to impute the value. Smith v. State, 33 Ind., 159; Talley v. State, 1 Tex. Crim. App., 688; Arnold v. State, 52 Ind., 281; 21 Amer. Rep., 175; Merwin v. People, 26 Mich., 298; 12 Amer. Rep., 214; Jackson v. State, 69 Ala., 249.

The evidence of record shows without contradiction that the money taken from said Cox was bills; this is an elastic expression; what kind of bills? There is no evidence to prove that the bills had any value; that they were United States greenbacks or bank notes, or that they had any relative value, or even that they would "pass current as money of the United States of America" of the value alleged, or any value whatsoever. The burden of proof was on the State to prove that the bills in question had relative value and not on the defendant. This the State failed to do, as evidenced by the record and set out in appellant's motion for a new trial, to the overruling of which appellant duly excepted, and we respectfully submit herein that the verdict is contrary to and not supported by the evidence of record. Gus Williams v. State, 44 Texas, 38-39.

The court erred in overruling the exceptions of appellant in the admission of the testimony of State's witness, Joe La Presto, in that said witness, La Presto, failed to qualify as a witness in that he did not understand the nature and obligation of an oath.

The oath must be administered to each witness before testifying, in the mode most binding upon the conscience. Art. 776, Rev. Stat., Code Crim. Proc.; Constitution, Art. 1, Sec. 5; Ake v. State, 6 Tex. Crim. App., 398; Gonzales v. State, 31 Tex. Crim. Rep., 495.

Witness is not required to state in court his belief or disbelief in any religion, creed or doctrine, as a requisite to qualifying as to his competency to understand the nature and obligation of an oath. Jones on Evidence, vol. 3, § 731; Dankle v. Kahn, 44 Ga., 266; Com. v. Burke, 16 Gray, 33.

The testimony of a witness whose understanding and reason is so defective that he cannot understand the nature and obligation of an oath is not admissible in evidence. Art. 768, Rev. Stat., Code Crim Proc.; Holst v. State, 23 Tex. Crim. App., 7, 8, 9; Gus Williams v. State, 44 Texas, 37, 38; Taylor v. State, 22 Tex. Crim. App., 543, 544; Williams v. State, 12 Tex. Crim. App., 137, 138.

It was error for the court to refuse to permit appellant to prove by the witness, Shutt, that he had worked for him, and that Shutt had paid him money for his services. 3 Greenl., Ev., Sec. 25; Jones v. State, 10 Tex. Crim. App., 537, 538; Lockhart v. State, 3 Tex. Crim. App., 567.

The trial court erred over exceptions of appellant in failing to instruct the jury in this cause as to the law of accomplice.

When the evidence submitted to the jury has given a tendency to prove that accused was an accomplice in the offense in question, even though he be indicted as a principal only, the court should charge the jury on the law of accomplice. Art. 715, Rev. Stat., Code Crim. Proc.,; Myers v. State, 6 Tex. Crim. App., 1; Miller v. State, 4 Tex. Crim. App., 251.

The trial court erred over the exception of appellant in accepting the verdict from and discharging the jury in said cause before the juror's minds were refreshed as to the testimony of witnesses, Horan and Chattin, in that the jury had advised the trial court that they could not agree on a verdict in that they could not agree as to what the testimony of said witnesses were. Art. 735, Code Crim. Proc., Rev. Stat.; Campbell v. State, 42 Texas, 591; Tarver v. State, 43 Texas, 464; 7 Tex. Crim. App., 156.

*Mann Trice*, Assistant Attorney-General, for the State.—1. The court did not err in overruling appellant's motion to quash the indictment. The indictment is framed under Art. 856, New Penal Code, the charging part being as follows: "That D. Colter did unlawfully in and upon W. H. Cox, make an assault, and then and there by the said assault and by violence to said W. H. Cox, and by putting the said W. H. Cox in fear of life and bodily injury, fraudulently and without the consent of the said W. H. Cox, take from the person and possession of him, the said W. H. Cox, sixty dollars and fifty cents ($60.50) in money, which passed current as money of the United States of America of the value of $60.50, the same being the corporeal personal property of the said W. H. Cox, with intent," etc. A motion to quash is based upon the insufficient description of the property—the money. It is not an offense eo nomine to rob one of money, the offense denounced is the "taking of property." There is a specific allegation that the money

was the property of W. H. Cox. All the allegation then in reference to the money is merely descriptive of the offense. Money is property within the meaning of the statute against theft and kindred offenses, See, Art. 789, Penal Code, and Brown v. State, 23 Tex. Crim. App., 214; Davidson v. State, 12 Tex. Crim. App., 214; Bryant v. State, 16 Tex. Crim. App., 144; Kirk v. State, 32 S. W. Rep., 1045, and Harris v. State, 31 S. W. Rep., 382.

There is a specific allegation that the money was of the value of $60.50. This allegation sufficiently meets appellant's objection to the indictment.

2. There was no error in the admission of the testimony of the State's witness, Joe La Presto. Under Subdiv. 2 of Art. 730, Penal Code, persons who after being examined by the court, if they appear not to possess sufficient intellect to relate transactions with respect to which they are interrogated, or who do not understand the obligations of an oath, are incompetent to testify. There is no pretense made here that La Presto could not relate transactions about which he was interrogated. The contention being that he did not understand the obligations of an oath. The determination of the compentency of the witness under this statute is vested within the sound discretion of the court, the rule is invariable that that discretion will not be revised in the absence of a showing that it was abused. See, Johnson v. State, 1 Tex. Crim. App., 609; Brown v. State, 2 Tex. Crim. App., 115; Mason v. State, 2 Tex. Crim. App., 192; Brown v. State, 6 Tex. Crim. App., 286; Burk v. State, 8 Tex. Crim. App., 336; Davidson v. State, 39 Texas, 129; Williams v. State, 12 Tex. Crim. App., 127. In the case of Davidson v. State, supra, the witness on examination was asked what would become of her if she swore to a lie. Her answer was that she did not know, and that she did not know what God or the laws of the country would do to her, if she swore falsely, but that she would tell the truth. Judge Walker says, "Older and wiser persons might have answered these questions in the same manner without impeaching their intelligence. Precisely what the Creator will do to one who swears falsely is a question which we may not be able to answer under oath. The admission of her testimony was properly in the sound discretion of the court. The judge who tried the cause states upon the record, that he believed her a competent witness, notwithstanding the manner she answered the question on voir dire." While it is true the witness, La Presto, did not profess any knowledge as to what would be done to him by the Creator in the event of his giving false testimony, it is clear, however, that he knew it was wrong to do so; and in answer to the question whether or not he knew that the laws of the country would punish him for false swearing, he stated, "I knew that a long time ago." Without any reference whatever to his religious belief, it is apparent that he understood the nature and obligation of an oath, and that there was punishment affixed for false swearing by the laws of the land.

3. There was no error in refusing to permit the witness, Shutt, to tes-

tify that he had paid appellant fifteen dollars a month for his services as a farm hand the preceding winter and spring. The contention is made that this was material to show that appellant was an industrious man, self-supporting, etc. Shutt testified that he worked for him on the farm the preceding winter and spring; that he was the best hand and most industrious man he ever had in his employ, and that his reputation for honesty and integrity was good and could be trusted in the community. The question then as to whether he paid him for his services was wholly immaterial and too remote to be considered, especially as it would not tend to rebut or explain any inculpatory fact in evidence against the appellant.

4. The trial court sufficiently instructed the jury on the question of the testimony of an accomplice. This is required only where the testimony of the accomplice is against the defendant. See, Joseph v. State, 30 S. W. Rep., 1067.

5. There was no error in refusing a charge on circumstantial evidence. The court, however, charged as to an alibi, which was all that was called for under the evidence in this case. The accomplice, La Presto's, testimony brings appellant clearly within the definition of a principal. His testimony is strongly corroborated by all the circumstances in the record, and the corroborative circumstances immediately surrounding the commission of the offense stand in such close juxtaposition to the body of the act, and so minutely corroborates the story of the accomplice, as to relieve the court of any necessity of charging on the question of circumstantial evidence. Moreover, it will be observed that the testimony of appellant is strongly corroborative, as it is clear that he was apprised of the intention of his co-conspirators to rob Cox before he got off of the train with them at Tyler Station, in Oak Cliff. The question as to whether he abandoned the enterprise was sufficiently charged in the general charge of the court, and again given prominence by the special instructions requested by the defendant and given by the court.

6. There was no error in refusing special charge number eight, defining an accomplice, and instructing the jury to acquit, if the testimony showed defendant to be merely an accomplice. This would have submitted an issue not raised by the indictment, and under all of the authorities, would have been erroneous. The jury were instructed affirmatively as to what constituted a principal, and told that if the facts in evidence did not bring him within this definition they should acquit him. This affirmative charge excluded the idea that they would be permitted to convict if the testimony only showed him to be an accomplice.

7. There was no error in refusing special charge number five, in reference to the alleged improper remarks of County Attorney R. B. Allen. The bill of exceptions in relation to this matter fails to disclose what objectionable language, if any, was used by the County Attorney. It is sought, however, to, show the same inferentially by the special instructions asked. This is not sufficient. The bill should set forth

the language used and the instruction should be based thereon. The trial court's explanation of this bill, as well as the record in reference to the testimony of Shutts, will show that the judge excluded all of his evidence in relation to his reputation· for truth and veracity, based on isolated facts in reference to his having told a lie to Shutts' wife and son, and the jury expressly told not to consider the same for any purpose.

8. The court did not err in accepting the verdict and discharging the jury before the jurors' minds were refreshed as to the testimony of the witnesses, Horan and Chattin. An examination of the twelfth bill of exceptions in reference to this matter will show that the jury requested that said witnesses be recalled, and that the court immediately issued process for the witnesses, but before the process had been returned the· jury agreed upon a verdict and returned the same. Art. 735, new Code Crim. Proc., does not contemplate that when the jury disagree as to the statement of a witness, that this particular witness shall be required to again detail his testimony before the jury, without reference to whether the jury agreed before the witness could be obtained. It is, however, permissible when they disagree. A disagreement is a condition precedent to recalling the witness in such cases. Now, it is apparent that if there was a disagreement during the discussion of the case, they finally agreed as to their verdict, and rendered same. Therefore, it would have been improper to have said witnesses again give their testimony. If the witnesses had been accessible at the time of the disagreement, of course it would have been proper for the court to have required them to again take the stand. When he was notified of the disagreement he issued process for the witness, and did all that he could toward com· plying with the requests of the jury. Even where the jury disagree, there is no error if the trial court refuses to delay a case to procure a witness who had testified, for the purpose of having him repeat his statement. See, Clark v. State, 7 Tex. Crim. App., 14; Clark v. State, 28 Tex. Crim. App., 189; Rudder v. State, 29 Tex. Crim. App., 262.

HENDERSON, JUDGE.—Appellant was convicted of robbery, and given five years in the penitentiary, and prosecutes this appeal. Appellant complains that the court erred in overruling his motion to quash the indictment; the ground of his motion being that there is no sufficient description of the money in said indictment. The description contained in the charging part of the indictment is as follows: "Sixty dollars and fifty cents in money, which passed current as money of the United States of America, of the value of sixty dollars and fifty cents," etc. This is in accord with the decision in Thompson v. State, 35 Tex. Crim. Rep., 511. Appellant also insists that the proof on this point is insufficient. We have examined the record in this connection, and believe that the evidence is sufficiently responsive to the allegation. The witness, Cox, stated that he had $67 when he reached Dallas, and stated about spending certain amounts, which left him about the sum claimed to have been

taken from him. In speaking of the occurrence, and of what he was robbed, he said: "They held me down, and turned my pockets wrong side out, and took all my money. I had the money in bills in my watch pocket. I had nothing but money on my person, except my watch and chain and a return railroad ticket." And again he says: "I know I had this money in bills. I had it in my watch pocket." Joe La Presto states, "We got his money from him"; and he speaks of dividing the money between them, and that he got six dollars. We have a statute on the subject of description of money as pertaining to indictments for theft or embezzlement. See, Code Crim. Proc., Art. 456. And this article has been held to apply to money taken by robbery. See, Thompson v. State, supra. In that case, following the authorities on the subject, "money" is held to be "legal tender money under the acts of congress of the United States, whether the same is coin or currency." When the witness, Cox, refers to the property taken from him as "bills," being money, we think this cannot be construed to mean other than currency money of the United States of America. We held in Jackson v. State, 34 Tex. Crim. Rep., 90, that the mere designation of property taken as "bills" was not sufficiently certain, as there were various kinds of bills. That is not the case here. There is a distinct reference to the bills taken as money. They are called by the witnesses "money," and they cannot be other than such currency bills of the United States of America, current as money under the acts of congress. Appellant insists that the witness, La Presto, did not qualify so as to become a competent witness. The examination of the witness would appear to indicate that he had but little religious training, and his idea of a future state of rewards and punishments was rather crude; but we do not understand that our law requires any character of religious belief in order to become a competent witness. Under our Constitution and statutes the only requirement in this regard is that the witness shall understand the nature and obligation of an oath; so we take it that an atheist or a deist is a competent witness if he understands the nature and obligation of an oath, and he is sworn or affirmed, as the case may be, in the manner most binding upon his conscience. The witness, in order to be competent, must understand the nature of the oath he is to take; that is, its essential character, the quality or attribute which constitutes and distinguishes it. The word "obligation" is defined to be "the constraining power or authoritative character of a duty; a moral precept; a civil law; or a promise or contract voluntarily made; that, to which one is bound; that which one is obliged or bound to do, especially by moral or legal claims; a duty." See, Cent. Dict. Now, if a witness shall understand that an oath or an affirmation, as the case may be, binds his conscience to speak the truth, the whole truth, and nothing but the truth, in regard to the particular matter under investigation, and that it is wrong to tell a lie, and that for a violation of this duty the law imposes a punishment as for perjury, we hold he is a competent witness. Without quot-

ing from the testimony of the witness, La Presto, which constitutes
a good deal of the record, in our opinion he manifested that he under-
stood the nature and obligation of an oath as above defined. The
State made no issue against the appellant as to his impecuniosity prior
to the alleged robbery; nor was it shown that the defendant was found
to have money afterwards. So, even if defendant had offered testimony
that he had some money at the time of the commission of the offense,
we do not think, under the circumstances of this case, that the same
would have been pertinent. Certainly evidence that some months
prior to the alleged robbery he had worked for wages was not relevant.
Appellant complains of the charge of the court on the subject of princi-
pals, and asked a number of special charges on this subject, which the
court refused to give, and he also complains of this action of the court.
On this subject, among other things, the court instructed the jury as
follows: "All persons who are guilty of acting together in the commis-
sion of an offense are principals, and may be prosecuted and con-
victed as such. Persons may act together in the commission of an
offense whether they are bodily present or not, provided they act
together under an agreement or combination to commit an offense,
and the offense was committed in pursuance of a common intent
and previously formed design, each party to such combination and
agreement performing his part of the act in the execution of such com-
mon design, and which part so acted being necessary to the comple-
tion and consummation of such offense." And again: "If, under the
evidence, there is in your minds a reasonable doubt as to the presence
of the defendant at the place where the offense is said to have been com-
mitted at the time it is alleged to have been committed, and there is
also a reasonable doubt in your minds as to whether defendant was a
principal in the commission of said offense, as principal has been here-
tofore herein defined, then you should acquit the defendant." The court,
in this connection, further charged on the subject of conspiracy, in con-
nection with the acts, declarations, etc., of co-conspirators, as to how
they could be used. The theory of the State was that on the night of
the robbery defendant, with three others, entered into a conspiracy to
rob the prosecutor, Cox; that they left Dallas for Oak Cliff on the same
car with the prosecutor; that when he got off the car at its terminal,
they also got off, and divided into pairs, two of them, to-wit: Clark and
La Presto, going ahead, and defendant and Wyatt following after them.
The evidence on the part of the State tends further to show that Clark
and La Presto intercepted the prosecutor. Clark knocked him down
and robbed him. The defendant and Wyatt came up just as they fin-
ished, and all four ran off together. A couple of witnesses, who came
up about the time the robbery was completed, testified that they saw
four men running off from the place where the alleged robbery was com-
mitted. They state that they were not certain whether there were four
men; their impression was to that effect. When they first saw them, the
prosecutor directed their attention to them. The men were then run-

ning off together, some little distance from where they were. La Presto testified that before the commission of the robbery he and Clark went on ahead, and the others followed on behind; that while they were getting the money out of Cox's pockets, they heard a horse and buggy coming up, and ran; that they met the other two (being defendant and Wyatt) about thirty-five feet from where they robbed Cox, and all ran off together. They all came to the street car track, and defendant and Wyatt came back to Dallas on the street car, and Clark and La Presto went on. The testimony shows that they came into town on the Santa Fe railroad. Under this state of case, the charge of the court on the question of principals was sufficient. The parties were in fact all engaged in the robbery. All were present. Two did the work, but the defendant and his companion were immediately at hand, carrying out their part of the agreement, and ready to give assistance should occasion require. The further charge of the court above quoted, that if defendant was not present at the time, and acting as principal, the jury should not convict him, sufficiently presented his theory of the case arising from the testimony offered by him; and the charges asked were not necessary. The charge asked on circumstantial evidence was not called for in this case, as there was positive evidence of appellant's participation in the robbery. There is nothing in appellant's contention that the court erred in not having the witnesses brought back to testify before the jury. The court sent for said witnesses, but pending their appearance it seems the jury brought in a verdict, and we are bound to presume that in the meantime their memory had been refreshed as to what said witnesses had testified, and they did not desire to have said witnesses reiterate their testimony. This is the only construction we can place upon the fact that they brought in a verdict. The judgment is affirmed.

*Affirmed.*