## JESSE BILLINGS V. THE STATE.

No. 9586.    Delivered December 2, 1925.

### 1.—Murder—Evidence—Adequate Cause—Failure to Charge—Error.

Where, on a trial for murder, the defensive testimony being that appellant, upon finding his wife in a compromising situation, with Harley Hollifield, got an axe and killed both his wife and her alleged paramour Hollifield, it was reversible error under this state of facts for the trial court to fail to charge the jury on the issue of manslaughter. Following Morrison v. State, 47 S. W. 369, and other cases cited.

### 2.—Same—Justifiable Homicide—Statute Construed.

Under Art. 1220 of our C. C. P. the right of the husband to kill the paramour, if found in the act of adultery with his wife, is conferred. The Legislature did not express the purpose nor intend to justify a person in killing his wife when she was found in the act of adultery with a man. By the express terms of the Statute the right of the husband to slay, under those conditions, was limited to the man with whom she was found taken in adultery and does not justify the killing of the wife. The cases of Williams v. State, 73 Tex. Crim. Rep. 480, and Cook v. State, 78 Tex. Crim. Rep. 120, holding a contrary view, are hereby overruled.

**3.—Same—Evidence—Improperly Admitted.**

Where, after a homicide, and the arrest and removal from the scene of appellant, and after the children of the deceased and defendant had been brought to the home of witness, it was error to permit witness to testify that she noticed blood on the children's faces, hands and clothes. Such testimony did not throw any light upon any relevant matter in the case, and should have been excluded.

**4.—Same—Evidence—Not Relevant—Improperly Admitted.**

Where, on a trial for murder, it was error to permit the State to prove by a witness that prior to the killing she went to the home of the deceased, and that deceased had a black eye, no connection being shown between such fact and the case under investigation, it should have been rejected, and so also was the testimony of the same witness that some two weeks before the homicide, the deceased had shown the witness four black marks nearly a foot in length across her body, improperly received.

**5.—Same—Misconduct of Prosecuting Attorney—Reprehensible.**

Many complaints appear in this record of the conduct of the District Attorney in interrogating the various witnesses in the case. Where such conduct on the part of the State's attorney present such a serious infraction of the rules of procedure as to deny to the appellant that fair and impartial trial guaranteed under the Constitution and laws of this State, such conduct may necessitate a reversal of the case.

Appeal from the District Court of Bexar County. Tried below before the Hon. W. S. Anderson, Judge.

Appeal from a conviction of murder, penalty life confinement in the penitentiary.

The opinion states the case.

*Hogan & Matthews,* of San Antonio, for appellant.

*C. M. Chambers,* District Attorney; *Lamar G. Selligson,* Assistant District Attorney; *Sam D. Stinson,* State's Attorney; *Nat Gentry, Jr.,* Assistant State's Attorney, for the State.

BAKER, JUDGE.—The appellant was convicted in the District Court of Bexar County for the offense of murder and his punishment assessed at confinement in the penitentiary for life.

The facts show that appellant on the 5th day of July, 1924, killed his wife Dollie Billings and at the same time killed her alleged paramour, Harley Hollifield. The following statement of the case is taken from the appellant's brief and is conceded by the State to be correct:

"He discovered the two together in a front room of his house according to his testimony, in a compromising attitude, whereupon he secured an axe and without saying a word, attacked

them with the axe, beating out the brains of Hollifield on the spot. Dolly Billings escaped from the house fleeing and calling for help—that defendant was going to kill her; defendant ran after her, cursing her and telling her he was going to kill her. He overtook her and started back with her to the house; she broke away from him two or three times but he overtook and caught her; he finally led or dragged her back into the house, when witnesses heard some loud words, a woman's voice pleading to be spared, a blow or blows and then everything became quiet. Dolly Billings lived several days and died without regaining consciousness. The killing took place about three o'clock in the morning of the 5th of July. The defendant, his wife, Harley Hollifield and one or two others had been spending the day celebrating the Fourth. The parties went for a drive after which Hollifield, defendant and his wife returned to defendant's home about 8 p. m. Upon arriving at his home, he, Dolly Billings and Harley Hollifield began playing a game of cards known as pitch; that he soon became ill and went and lay down on the bed in a room removed by one from the sitting-room where they were playing cards. The room adjoining the sitting-room and between the room where the parties were playing cards and where appellant was lying down was the bedroom of the children. Appellant testified that when he went into the room between 8 and 9 o'clock in the evening he lay across the bed without removing his clothes or his shoes. That he soon went to sleep; that he awoke about 3 o'clock in the morning and upon getting up observed a light burning in the front room, the light of which he could see by looking through the two intervening doors. His shoes had rubber heels and, without sneaking, he walked to the door of the sitting-room and looked in. Hollifield was sitting on the far side of the room facing where appellant stood. Dolly Billings, appellant's wife, was sitting crosswise on Hollifield's lap with her arms around his neck. Hollifield's right arm was around Dolly Billing's waist and his left hand was up under her dress. The parties were in a close embrace hugging and kissing. Appellant testified that he had no gun of any kind, but in the bathroom, which adjoined the room in which he had been sleeping, was an axe which he had used to cut wood at his former residence but the house he then occupied being equipped with gas he kept the axe in the house to keep it from being stolen. That as soon as he witnessed the scene just described he immediately whirled and went to the bathroom and got the axe. Upon his return to the door Hollifield and Dolly Billings, neither of

whom had apparently seen him, had gotten up and were walk-
ing in the general direction of the door where he was standing,
just to the right of which was a sofa. That as soon as he
entered the room Hollifield, and Dolly Billings rushed towards
him and that he began beating them with the axe. The testi-
mony shows that all of the parties had been drinking during
the day of the 4th. Appellant testified that from the time he
went to get the axe he has no recollection of what occurred be-
cause he went crazy mad at the scene he witnessed. He does
not remember which one he struck first or whether he had
killed Hollifield before Dolly Billings ran out of the house. He
testified that he could not remember about Dolly Billings run-
ning out of the house or his pursuing her and testified that he
did not believe that she ever left the house. One of the State's
witnesses, H. C. Merriman, testified that appellant appeared
to be more crazy mad than drunk; that from his actions he
appeared to have too good use of himself to be drunk. There
was a great deal of testimony about domestic troubles between
Dolly Billings and appellant and deceased, Harley Hollifield.
Appellant himself testified that he had considered Harley
Hollifield one of his best friends and that until he witnessed
the scene in the home he had never suspected any undue in-
timacy between his wife and the deceased, Harley Hollifield.
The testimony as a whole shows, without dispute, that up to
the night of the 4th of July the relation between appellant and
deceased, Hollifield, had been friendly almost to the point of
intimacy. The theory of the State was that appellant killed
his wife, Dolly Billings, on account of malice that he enter-
tained for her and that he killed Hollifield in order to have a
defense of improper conduct. The appellant's theory was and
is that the killing was justifiable homicide in that the scene
witnessed, the time and circumstances were such as to cause
a reasonable mind to believe the parties had been guilty of
adultery or were about to commit the act of adultery. It was
appellant's further contention that if the facts of the case
were not such as to constitute justifiable homicide they were
sufficient to raise the issue of manslaughter and that, under
the facts, if appellant were guilty of any degree of culpable
homicide he would not be guilty of a greater grade than man-
slaughter. The issue of justifiable homicide was presented by
the learned trial judge to satisfaction of appellant, but the
court refused to charge on the issue of manslaughter upon
the proposition that the appellant was either justified or else
was guilty of murder. Proper exception was taken to the

court's failure to charge on manslaughter and a special charge presenting the issue of manslaughter was presented to the court and by the court refused to which proper exception was taken."

The first question that presents itself for consideration is that pertaining to the court's action in refusing the charge on manslaughter in the case. Our Statute defines manslaughter to be a voluntary homicide committed under the immediate influence of sudden passion arising from an adequate cause and neither excused nor justified by law. By adequate cause is meant such a cause as would commonly produce a degree of anger, rage, sudden resentment or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection. The Statute goes further and sets out certain things which will as a matter of law be deemed adequate causes. These consist of an assault and battery, adultery of the person killed with the wife of the person killing, under certain circumstances, insulting words or conduct of the person killed toward a female relation of the party killing, and a serious personal conflict under certain conditions. It is a well known rule of construction in this State that the causes named in the Statute as being adequate are merely illustrative, and it is well settled by the authorities that any cause whether named in the Statute or not which is calculated to, and would reasonably produce a degree of anger, rage, sudden resentment or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection is deemed an adequate cause. It is not necessary, in this case to decide that the conduct described by appellant in his testimony between the deceased and his wife, would be embraced under one of the causes expressly named by the Statute as being adequate. It is sufficient to say that if the testimony detailed by the appellant as to what he saw transpiring between his wife and Hollifield was sufficient to show that these things might have commonly produced a degree of anger, rage, resentment or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection, then it was clearly the duty of the court to submit this matter to the jury for its determination. In other words, the jury would have the right under proper instructions from the court to pass on the question as to whether the seeing of the things detailed by him produced in his mind such anger, rage or resentment as rendered him incapable of cool reflection. We think that the question is not open to serious doubt. If his testimony is true, immediately

before the killing he saw the deceased, his wife, sitting across Hollifield's lap with her arms around his neck and he saw Hollifield with an arm around his wife's waist and his left hand up under her dress. He saw the parties in a close embrace, hugging and kissing. To seriously contend that this course of conduct would not arouse in a person of ordinary temper a degree of anger, rage and resentment sufficient to render his mind incapable of cool reflection, would be in effect to destroy all of the impulses that actuate men in their everyday relations in life. We repeat that the question is not open to serious doubt. The facts were amply sufficient to raise the issue that it might produce anger, rage and resentment in any ordinary man, and we cannot agree with the contention of the State that this state of mind would exist only against the man Hollifield. On the contrary, we think it clear that it may have been even more intense on appellant's part toward his wife. Morrison v. State, 47 S. W. 369; Gregory v. State, 94 S. W. 1041; Williams v. State, 165 S. W. 583.

The State contends however that in view of the fact that the court charged on justifiable homicide under Art. 1220 C. C. P. that the charge on manslaughter was unnecessary. It is sufficient answer to this contention to say that in our opinion the court should not have charged on justifiable homicide under said Art. 1220 C. C. P. in this case. We are aware of the fact that the case of Williams v. State, 73 Tex. Cr. Rep. 480 and the case of Cook v. State, 78 Tex. Cr. Rep. 120 are authority for the court's action in giving this charge in this case. After a very careful consideration of those cases and certain expressions in other cases which seem to support them, we have reached the conclusion that they are clearly wrong. Those cases are an extension of the Statute which we are unable to justify or endorse. The right to kill is a matter with which the legislative branch of the government alone ought to deal, and when it confides to the citizen a right so important, it is, we think the clear duty of this court to follow but not extend such legislative declaration beyond the class clearly stated in the Statute. Our great respect for the wisdom of the eminent judge who wrote the opinions in those cases is such as to make us hesitate to dissent from any view expressed by him. But a careful consideration of the question involved has convinced us beyond question that by enacting Art. 1220 of the C. C. P. the Legislature did not express the purpose or intend to justify a person in killing his wife when she was found in adultery with a man. By its express terms,

the right of the husband to slay under those conditions was limited to the man with whom she was found taken in adultery." If under Art. 1220 of the C. C. P. the Legislature in its wisdom had desired to justify the husband in killing his wife when taken in adultery, it was clearly its province to so declare and in the absence of a legislative declaration to this effect, this court is without the right or the authority to furnish an accused with any such shield. By no rule of construction known to us would we be justified in extending the Statute's protection to one who kills his wife when by its clear and unequivocal terms it limits the right to the killing of "one taken in the act of adultery with his wife." So far as the Williams case, supra, and the Cook case, supra, are in conflict with the conclusions herein reached, the same are hereby overruled, and on another trial of this case, we think the court should not charge on justifiable homicide under Art. 1220 of the C. C. P.

From what has been said, it follows that in our opinion the court should have given a correct charge on the issue of manslaughter and his refusal to do so must result in a reversal of the case.

Appellant also complains at the court's action in permitting the witness Merriman to testify over the objection of the defendant that after the officers had taken the defendant to jail and after the children of the defendant and deceased had been brought to the home of the witness that in putting the children to bed, she noticed they had blood on their faces, hands and clothes and that their clothes were covered with blood. We think his testimony should have been excluded. We fail to see from this record how the introduction of this testimony tended to illustrate any point or solve any question or throw any light upon any matter connected with the proper solution of the case. There was no dispute as to the physical facts concerning the killing and under these conditions, the introduction of this testimony was improper. Sec. 1855 Branch's P. C. for full collation of authorities.

Appellant complains at the court's action in permitting the State to prove by the witness Chitwood that on one occasion prior to the killing, she went to the home of the deceased, who was a sister-in-law of the witness, and the deceased had a black eye. This testimony was not admissible. No connection is shown between it and any fact or circumstance under investigation in this case and it should have been rejected.

This same witness was permitted to testify that some two weeks before the homicide the deceased had shown the witness

four black marks nearly a foot in length across her body. Statements made by the deceased not in the presence of the defendant as to how she received said bruises were, of course, hearsay and were properly excluded by the court but we think the court should have also refused to have permitted the witness to testify to the marks on the deceased unless there was legal testimony connecting the appellant with said marks.

There are many complaints in the record at the conduct of the district attorney in interrogating the various witnesses in the case. In view of the fact that the case must be reversed for other reasons, we have not deemed it necessary to discuss these matters. We feel impelled to say, however, that the complaints urged present what we believe to be a series of infractions of the rules of procedure that were not conducive to such a fair and impartial trial as every man is entitled to under the Constitution and laws of this State.

For the errors above discussed, it is our opinion that the judgment of the trial court must be reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.