**JIMENEZ v. STATE.   (No. 9709.)**

(Court of Criminal Appeals of Texas. Dec. 2,
1925. Rehearing Denied Feb. 24, 1926.)

**1. Criminal law ⬥1153(2)—Witnesses ⬥79
(2).**

Child's competency as witness is determined
by examination before court, whose action will
not be revised on appeal without showing abuse
of discretion.

**2. Witnesses ⬥40(1), 45(2)—Children un-
able to relate transactions questioned about,
or not understanding obligation of oath, are
incompetent witnesses.**

Children appearing, after examination by
court, not to possess sufficient intellect to re-
late transactions questioned about, or not un-
derstanding the obligation of an oath, are in-
competent witnesses.

On Motion for Rehearing.

**3. Witnesses ⬥45(2)—Testimony of four
year old child, not realizing obligation of oath,
held inadmissible (Code Cr. Proc. 1925, art.
708, subd. 2).**

Even if four year old daughter of accused
in homicide case appeared to possess sufficient
intelligence to relate transaction questioned
about, where she did not realize the obligation
of an oath, she was incompetent, and court
erred in admitting her testimony, under Code
Cr. Proc. 1925, art. 708, subd. 2.

**4. Criminal law ⬥1153(2)—Witnesses ⬥79
(3)—Intelligence and knowledge of obligation
of oath of child not under four years is pri-
marily for trial judge, whose decision is final,
in absence of abuse of discretion.**

Intelligence and knowledge of the obligation
of an oath of a child not under four years old
is primarily for trial judge, whose decision is
final, in absence of abuse of discretion.

**5. Homicide ⬥309(5)—Where accused killed
wife and another believing them to be in act
of adultery, refusal to charge on manslaugh-
ter was error (Pen. Code 1925, art. 1220).**

Where accused killed wife and another, be-
lieving them to be in act of adultery, refusal
to charge on manslaughter was error, even
though court erroneously charged on justifiable
homicide, under Pen. Code 1925, art. 1220.

**6. Homicide ⬥101.**

Where accused killed wife, believing her
in act of adultery, charge under Pen. Code
1925, art. 1220, that, if in adultery, homicide
was justified was improper.

Commissioners' Decision.

Appeal from District Court, Bexar County;
W. S. Anderson, Judge.

Santos Jimenez was convicted of murder,
and he appeals. Reversed and remanded.

Watson & Chapin, of San Antonio, for ap-
pellant.

C. M. Chambers, Dist. Atty., and Carl
Wright Johnson, Asst. Dist. Atty., both of
San Antonio, Sam D. Stinson, State's Atty.,
of Austin, and Nat Gentry, Jr., Asst. State's
Atty., of Tyler, for the State.

BERRY, J. The appellant was convicted
in the district court of Bexar county for the
offense of murder, and his punishment as-
sessed at death.

The facts show that the deceased was the
wife of the appellant, and that the appellant
killed both his wife and Juan Aranda, a
young man between 18 and 19 years of age.
The killing occurred at the home of the ap-
pellant. It was the state's theory that the
appellant had become tired of his wife, and
desired to live with another woman, and that
he brought the deceased, Aranda, to his
house, and killed him first, in order to predi-
cate a defense thereon for killing his wife,
and that he afterwards killed his wife. It
was the appellant's theory that the deceased
and the boy, Aranda, were found by him in a
compromising position, which indicated to his
mind that they were committing adultery just
before the slaying. On this theory the ap-
pellant testified as follows:

"When I got home, I pulled the rope off of
my horse, and I just left him stand there, and
I walked in the house, and I seen a fellow lying
in the bed with my wife. There were no lights
on in the house, but I saw this man and my
wife lying on the bed together, on the middle
bed, between two cots."

He further testified that he thought they
were in the act of intercourse, adding:

"They were lying down. * * * I couldn't
tell whether he was on top or whether they
was on the side. Their arms were around
their bodies. When I opened the door, they
jumped off the bed. He ran toward the back
door."

By his first bill of exceptions the appellant
complains at the court's action in permitting
the daughter of the appellant to testify
against him in the case. The bill shows that,
before the witness testified, the appellant was
granted permission to interrogate her as to
her competency under the law as a witness,
and in answer to said interrogatories the wit-
nes testified as follows:

"I am four years old, I cannot read and write.
I have gone to school, but I didn't learn to read
or write. They haven't given us books yet. I
do not know what an oath in court is. I do
not know what it is to be sworn in a case. I
do not know what the penalty is if I testify
falsely. I do not know what perjury is. I
do not know what the penalty for perjury is.
I do not know what the obligation of an oath
is. I do know what they could do with me in
court here for telling a falsehood; they can
punish me. Nobody told me that. They can
punish me by throwing me in the fire. The
court here would throw me in the fire; the
judge would take me and throw me in the fire.
"I know this gentleman right here, Mr. Bat
Corrigan, the assistant district attorney. He

speaks Spanish. He has not had me in the district attorney's office and talked to me in Spanish. He has talked to me; he talked to me in Spanish to-day about this case."

Upon the examination by the state as to her qualification, she testified as follows:

"I am going to tell the truth here. My father is Santos Jimenez. God would punish me if I didn't tell the truth here, he would throw me in the fire."

This constitutes all of the testimony of the witness tending to show her competency as a witness, and, after she had testified as to her qualification, as above set out, the bill of exceptions shows that she was permitted by the court to give damaging testimony against the appellant. The bill of exceptions is signed by the court without any qualification or explanation, and, unless the above testimony shows that the witness was competent and qualified to testify, then same is not shown anywhere in the bill of exceptions. Section 2, art. 708, of our C. C. P. (1925), provides that all persons are competent to testify in criminal actions, except the following:

"Children or other persons who, after being examined by the Court, appear not to possess sufficient intellect to relate transactions with respect to which they are interrogated, or who do not understand the obligation of an oath."

[1, 2] It is well settled in this state that the competency of a child as a witness is to be determined by an examination before the court, and the action of the trial court thereon will not be revised on appeal, in the absence of a showing that its discretion was abused. Section 1771, Branch's P. C., for collation of authorities. It is also well settled, however, that children who, after being examined by the court, appear not to possess sufficient intellect to relate transactions with respect to which they are interrogated, or who do not understand the obligation of an oath, are incompetent witnesses. Williams v. State, 12 Tex. App. 137; Holst v. State, 3 S. W. 757, 23 Tex. App. 9, 59 Am. Rep. 770; Lawson v. State (Tex. Cr. App.) 50 S. W. 346; Mays v. State, 127 S. W. 546, 58 Tex. Cr. R. 653; Colter v. State, 39 S. W. 576, 37 Tex. Cr. R. 284; Murphy v. State, 35 S. W. 174, 36 Tex. Cr. R. 24; Brown v. State, 176 S. W. 51, 76 Tex. Cr. R. 513; Anderson v. State, 226 S. W. 414, 88 Tex. Cr. R. 307.

From the statute above quoted, it appears that before a child of tender age is permitted to give evidence in a criminal case two things must concur: First, it must appear that the child possesses sufficient intelligence to relate transactions with respect to which he or she is interrogated; and, second, it must appear from the examination by the court or under its direction that said child understands the obligation of an oath. If the child fails in either of these two respects,

then its testimony should be excluded. If it be conceded that the child in this case appears to possess sufficient intellect to relate transactions with respect to which she was interrogated, we think that she unquestionably fell short in the other qualification; namely, that of being sufficiently advanced in intelligence to understand the obligation of an oath. The evidence quoted above shows that she had no conception of what an oath in court is, and she did not know what it was to be sworn in a case. It further shows that she had no conception of what the penalty is for testifying falsely; that she had no idea of what constitutes perjury or what the penalty therefor is. In fact, she categorically and affirmatively testified that she did not know what the obligation of an oath is, and this statement is nowhere qualified or in any manner weakened by any other statement she made in her examination before the court. It is true that she testified that she knew they could punish her for telling a falsehood, but her idea as to the punishment is not sanctioned by either law or common sense. The question for the determination of the court was, Did her testimony on the question of her competency show that she had "a realizing sense of the obligation of an oath?" We are satisfied that it was insufficient for this purpose. On the contrary, as above indicated, we think it clearly and affirmatively shows that she did not have such understanding, and we think the court was in error in permitting this child to testify under the circumstances above detailed. An examination of the authorities last above cited, we think, will unquestionably disclose the correctness of this conclusion.

Appellant also complains at the court's action in refusing to charge on manslaughter in the case. This question has been fully discussed in an opinion by us this day delivered in the case of Billings v. State (No. 9586) 277 S. W. 687, and under the authority of that case we hold that the court was in error in refusing to charge the law of manslaughter in the instant case, and also that the court should not have charged on justifiable homicide under Pen. Code 1925, art. 1220.

If the testimony detailed by the appellant as to what he saw transpiring between his wife and Aranda was sufficient to have commonly produced a degree of anger, rage, or resentment in a person of ordinary temper sufficient to render the mind incapable of cool reflection, then it was the duty of the court to submit this matter to the jury for its determination. If his testimony is true, when he came to his home he saw these parties lying on the bed and embracing each other. It is also true that he further testified that he thought they were having intercourse. There was testimony from the state that the parties were not having intercourse. As was said in the Billings Case, supra, "to seriously

contend that this course of conduct would not arouse in a person of ordinary temper a degree of anger, rage, and resentment sufficient to render his mind incapable of cool reflection, would be in effect to destroy all of the impulses that [usually] actuate men in their everyday relations in life." Nor in our opinion does the fact that appellant stated in his testimony that he thought they were in the act of intercourse serve to deny him the right to have the issue of manslaughter submitted, notwithstanding the fact that the court charge justifiable homicide under article 1220, Pen. Code 1925. The jury may not have believed all of the appellant's testimony. They may have concluded that he saw his wife and Aranda in a compromising position which even to his mind indicated less than actual copulation. And, if the jury did so find, then they were left no alternative under the court's charge but to convict the appellant of murder. This was not a correct presentation of the issues to the jury. It seems to our minds clear that manslaughter was raised by the testimony and should have been given upon request of the appellant by the court in his charge to the jury.

There are many other errors alleged by the appellant, but in view of the fact that they may not arise in the same form on another trial of the case, a discussion of them is not deemed necessary.

For the errors above discussed, it is our opinion that the judgment should be reversed and the cause remanded.

PER CURIAM. The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the court.

On Motion for Rehearing.

MORROW, P. J. [3, 4] State's counsel in an oral argument, as well as in a written motion showing research and ability, asks for a review of the reversal of the decision holding that, in receiving the testimony of the child to which reference is made in the original opinion, error was committed.

In the motion the age of the child is treated as seven years. As the matter was before the court upon the record, as shown by the bill of exceptions the child was only four years old. As stated in the original opinion, she was four years old, could not read nor write, and did not, in the opinion of this court, possess sufficient comprehension of the obligation of an oath to warrant the receipt of her testimony. Courts and text-writers agree in the conclusion that, when the child is only four years of age, extreme caution should be used in ascertaining its competency. In Hipple's Case, 191 S. W. 1150, 80 Tex. Cr. R. 542, L. R. A. 1917D, 1141, the following quotation from Wharton's Crim. Evidence, § 366, p. 743, is taken:

"To permit a child under four years of age to be sworn and examined as a witness would be to trifle with public justice. Hence, the dying declarations of a child of four years have been properly held inadmissible, and the admissibility of children of that age, as witnesses, is, on the same reasoning, disputed. But the testimony of a child between four and five years of age, and that of a child between six and seven, has been received on the trial of an indictment charging an attempt to ravish. Four years has been assigned as the minimum age, but after this age the question of admissibility is to be decided by the court."

The statute declares one incompetent who does not appear to have sufficient intelligence to relate transactions with reference to which they are interrogated or who do not understand the obligation of an oath. It is not to be assumed that a child is to be examined in the same manner, nor to be expected to explain its comprehension of the obligation of an oath in like language or with such clearness as would be expected from an older person. From a text-writer we quote:

"He is competent if he possesses mental capacity and memory sufficient to enable him to give a reasonable and intelligible account of the transaction he has seen, if he understands and has a just appreciation of the difference between right and wrong, and comprehends the character, meaning and obligation of an oath. If the witness fulfills these requirements, it is immaterial as bearing upon its competency that he is unable to define the oath or to define testimony." Underhill's Crim. Ev. (3d Ed.) § 331.

[5, 6] Where the child is not under four years of age, the intelligence and the knowledge of the obligation of an oath is primarily for the trial judge, and, in the absence of an abuse of discretion, his decision will be final. See Anderson v. State, 110 S. W. 57, 88 Tex. Cr. R. 308; Zunago v. State, 138 S. W. 713, 63 Tex. Cr. R. 58, Ann. Cas. 1913D, 665; Partin v. State (Tex. Cr. App.) 30 S. W. 1067; Click v. State (Tex. Cr. App.) 66 S. W. 1104; Wren v. State (Tex. Cr. App.) 264 S. W. 1007; Nicholas v. State (Tex. Cr. App.) 270 S. W. 555; Branch's Ann. Tex. P. C., § 1771, and cases cited. Where the conclusion of the trial judge, upon the facts before him, was clearly wrong, this court has frequently held that in receiving the testimony of a child there was harmful error. See Williams v. State, 12 Tex. App. 127; Holst v. State, 3 S. W. 757, 23 Tex. App. 9, 59 Am. Rep. 770; Lawson v. State (Tex. Cr. App.) 50 S. W. 346; Mays v. State, 127 S. W. 546, 58 Tex. Cr. R. 653; Anderson v. State, 226 S. W. 414, 88 Tex. Cr. R. 308. In a case where a child is so young as the present record reveals, and so ignorant touching the obligation of an oath as her testimony discloses, we cannot bring ourselves to believe the receipt of her testimony to be conducive to the due administration of justice. It may be that upon another trial, with proper instructions touching the nature

of the obligation of an oath and the knowledge acquired through the lapse of time, her testimony may appear in a more favorable light. Upon this record showing her age to be four years and her lack of comprehension such as disclosed, we are constrained to regard the receipt of her testimony as error. In the original opinion, we have declined to follow the precedents holding that the husband may slay his wife when he takes her in the act of adultery. We cannot, however, bring ourselves in accord with the view of state's counsel that in the present case a charge on the law of manslaughter was not required. The situation portrayed by the appellant's testimony, if true, was obviously such as to warrant the jury in concluding that his mind, by adequate cause, was rendered incapable of cool reflection. The truth or falsity of his words and his state of mind were matters for the jury to determine. The fact that the court instructed that the circumstances being such as the appellant in his testimony declared them to be, he would be justified in killing his wife does not, we think, answer the contention that a charge on manslaughter should have been accorded. The jury might shrink from deciding that one might·deliberately take the life of his wife when taken in adultery and yet easily conclude that the act might so inflame his mind as to render the accused incapable of cool reflection. Upon this subject we refer to the remarks made in the Billings Case (Tex. Cr. App.) 277 S. W. 687.

With the foregoing comments, the state's .motion for rehearing is overruled.